967 P.2d 653

**CHILD SUPPORT ENFORCEMENT AGENCY, State of Hawai'i, and Kristie Booth, Complaining/Petitioning Mother, Plaintiffs–Appellants,**

v.

**Michael J. MAZZONE, Jr.,
Defendant–Appellee**

No. 19915.

Intermediate Court of Appeals of Hawai'i.

May 26, 1998.

---

Rosemary McShane, Mark G.S. Au, Richelle K. Kawasaki, and Amy Murakami, Deputies Corporation Counsel, City and County of Honolulu, on the briefs for plaintiff-appellant.

Emmanuel G. Guerrero, Cheryl A. Dunn Takabayashi, and Michael K. Wong on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

BURNS, Chief Judge.

Plaintiff–Appellant Child Support Enforcement Agency (CSEA) appeals the family court's (1) May 16, 1996 Order Granting in Part and Denying in Part Defendant's Motion for Reconsideration and/or Post–Decree Relief and Modification of Child Support to Reflect the Guidelines of the Child's Home State of Rhode Island and/or Exceptional Circumstances (May 16, 1996 Order); and (2) the July 17, 1996 Findings of Fact, Conclusions of Law and Order Granting in Part and Denying in Part Defendant's Motion for Reconsideration and/or Post–Decree Relief and Modification of Child Support to Reflect the Guidelines of the Child's Home State of Rhode Island and/or Exceptional Circumstances.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

In essence, we conclude that the family court did not fully comply with the mandate of Hawai'i Revised Statutes (HRS) § 571–52.5 (1993) that "[w]hen the court establishes or modifies the amount of child support required to be paid by a parent, the court shall use the guidelines established under section 576D–7, except when exceptional circumstances warrant departure."

## BACKGROUND

In March 1994, the State of Rhode Island filed a Uniform Reciprocal Enforcement of Support Act (URESA) case in Rhode Island, alleging that Defendant–Appellee Michael J. Mazzone Jr. (Mazzone), a resident of Hawai'i, is the natural father of a daughter, born on June 10, 1984 (Minor), and seeking child

support from Mazzone. Mazzone was served on August 20, 1995. In his September 1, 1995 answer, he denied paternity and requested genetic testing. Based on the genetic test results, Mazzone admitted paternity of Minor.

The $700.00 per month[1] amount calculated pursuant to the November 1994 Hawai'i Amended Child Support Guidelines (Hawai'i 1994 ACSG), *see* 2 Hawaii Inst. for Continuing Legal Education, *Hawaii Divorce Manual* § 17, at 161 (5th ed.1996) (hereinafter *Divorce Manual*), was based on Mazzone's gross income in the amount of $5,737.00 per month and the zero income of the mother (Mother) of Minor. The Deputy Corporation Counsel informed the family court that Mother was working but was still receiving Aid to Families with Dependent Children (AFDC). The Hawai'i 1994 ACSG specifies that income does not include *"public benefits based only on need, such as AFDC[.]" Divorce Manual,* at 167 (emphasis in original).

A hearing to determine the amount of child support Mazzone would be required to pay was held on March 14, 1996. At the hearing, Mazzone's counsel sought a deviation from the amount calculated pursuant to the Hawai'i 1994 ACSG. The relevant part of the discussion is as follows:

> [CSEA'S COUNSEL]: Guidelines have been prepared, your Honor, showing seven hundred dollars.
>
> THE COURT: Seven hundred dollars.

* * *

> [MAZZONE'S COUNSEL]: Your Honor—yeah. We've seen the—the proposed guidelines. And it appears to be accurate. However, we would ask for a deviation—a slight deviation.

* * *

> [MAZZONE'S COUNSEL]: And the reason for that, your Honor, is this—we're going to—seven hundred, that's what the guidelines says—that's by the guidelines. There's nothing we can do with that. I've tried working with the numbers, there's nothing we can do.

* * *

> [MAZZONE'S COUNSEL]: I've spoken with Mr. Mazzone. I think it would be fair a[sic] deviation of five hundred if the Court is so—

Mazzone asked the family court to deviate from the $700.00 per month based on Mazzone's preschool tuition and related expenses for his four-year-old child, on the speculation that Mazzone's two-year-old child would be attending preschool the following year at the same cost and on the allegation that Mother was employed and was living with a "significant other."

The family court stated its inclination to order child support in the amount of $500.00 based on Minor's age and Mazzone's obligation to his two younger children. It did not explain the relevancy of Minor's age. The discussion then turned to the question why no income was attributable to Mother. CSEA suggested a continuance to obtain accurate information. The family court responded as follows:

> THE COURT: I'll tell you what I'm going to do. I'm going to establish child support of five hundred dollars a month and I will welcome a motion for reconsideration filed by either party....

* * *

> THE COURT: It might be too high—five hundred. But then again, it might be too low. But it's the best call I can come up with right now.

---

1. Plaintiff–Appellant Child Support Enforcement Agency (CSEA) asserts that the calculations pursuant to the November 1994 Hawai'i Amended Child Support Guidelines submitted to the court should have indicated a child support obligation in the amount of $740.00 per month. The $740.00 per month amount was shown in an April 11, 1996 Child Support Guidelines Worksheet submitted to the family court by CSEA as an exhibit to its memorandum in opposition to the motion for reconsideration filed by Defendant–Appellee Michael J. Mazzone, Jr. (Mazzone). It attributed to Mazzone an income of $5,737 per month and attributed zero income to the mother of the child. It calculated $250 for primary support and $487 for the Standard of Living Allowance and rounded it to the nearest $10.

Both the Order Relating to Child Support and the Order for Income Assignment were entered on March 27, 1996.

On April 3, 1996, Mazzone filed a Motion for Reconsideration and/or Post–Decree Relief and Modification of Child Support to Reflect the Guidelines of the Child's Home State of Rhode Island and/or Exceptional Circumstances (April 3, 1996 M/R), asking the family court to lower the child support to $275.00 per month based on Rhode Island's child support guidelines (Rhode Island CSG) and/or exceptional circumstances. Attributing a gross monthly income of $1,200.00 for Mother and a gross monthly income of $5,232.00 for Mazzone, Mazzone computed that the Rhode Island CSG required Mazzone to pay $274.00 per month.

Exhibit A of the April 3, 1996 M/R is Mazzone's February 13, 1996 Income and Expense Statement and Asset and Debt Statement. It itemizes Mazzone's weekly income and payroll deductions as follows:

| | |
|---|---|
| Gross income | 1,324.00 |
| Fed. income tax | 123.65 |
| State income tax | 96.61 |
| FICA (Social Security) | 82.09 |
| Union dues | 305.62 |
| Net per week | 937.00 |
| Net per month | 4,060.33 |

The union dues is $305.62 per month rather than per week. The per week amount is $70.53 ($305.62 times 12 divided by 52). We do not know how the net amount per week of $937.00 was calculated.

Mazzone's February 13, 1996 Income and Expense Statement itemizes the following monthly expenses:

| | |
|---|---|
| Mortgage | 1,560.34 |
| Utilities | 210.00 |
| Car payment | 550.00 |
| Insurance on vehicle | 200.00 |
| Vehicle maintenance | 25.00 |
| Vehicle operation | 250.00 |
| Food for Mazzone | 120.00 |
| Food for children | 600.00 |
| School | 400.00 |
| TOTAL MONTHLY EXPENSES | 3,915.34 |

Mazzone's February 13, 1996 Asset and Debt Statement reported that he owned a 1990 Mazda Pickup subject to a debt; he and his wife owned a 1992 Mitsubishi Eclipse subject to a debt; they acquired 92–1251 Panana Street in April 1993 and owe $164,800 on it; and they owe Chase Manhattan $164,000 at $1,343.63 per month for a debt incurred in "Sept./95" secured by "Apt.# 4."

Mazzone's counsel alleged in writing the following exceptional circumstances.

1. Mazzone is the sole income provider to himself, his spouse, and his children ages four and two;

2. Monthly, $200.00 of his income is a reimbursement for business expense, and $305.00 is Union dues;

3. Mazzone's monthly expenses for the support of his spouse and two children are fixed at $2,795.00 for housing and transportation;

4. Mazzone has a monthly expense of $400.00 for the older child's preschool and the amount will double next year when the younger child will also be attending preschool. Moreover, the $400.00 does not include additional fees for juice, food, and related expenses; and

5. After his fixed monthly expenses and necessary living expenses, Mazzone is left with a monthly deficit of $105.00.

On April 11, 1996, CSEA filed a Memorandum in Opposition to Defendant's Motion for Reconsideration and/or Post–Decree Relief and Modification of Child Support, asking the family court to deny Mazzone's April 3, 1996 M/R for the following reasons: (a) the motion failed to comply procedurally with Hawai'i Family Court Rules (HFCR) 7(b)(1) [2] and 59(i); [3] (b) based on HRS

---

2. Hawai'i Family Court Rule (HFCR) 7(b)(1) states in relevant part:

(b) **Motions and Affidavits.**
(1) An application to the court for an order shall be by motion which, unless otherwise permitted by the court, shall be made in writing, shall state with particularity the grounds therefor, shall set forth the relief or order sought, and if involving a question of law shall be accompanied by a memorandum in support of the motion. The requirement of writing is fulfilled if the motion is stated in a written

§ 576–21 (1993),[4] Hawai'i law, not the law of the initiating jurisdiction (Rhode Island), must be applied in determining child support in a URESA action; (c) no finding of exceptional circumstances should be made because HFCR Rule 59(b)[5] limits reconsideration of decisions to evidence previously adduced and Mazzone did not present evidence at the time of the original hearing which would warrant a finding of exceptional circumstances; and (d) Mazzone's income including the $200.00 monthly business reimbursement and the $305.00 he pays for his union dues monthly is $5,737.00.

Mazzone's April 3, 1996 M/R was heard on April 11, 1996. Counsel for Mazzone asked the court to order either $275.00 per month child support or a sliding scale which would allow him to pay $200.00 the first year, $300.00 the next year, $325.00, then $350.00 thereafter. The relevant part of the discussion is as follows:

> [MAZZONE'S COUNSEL]: Your Honor, the issue here is—first on the guidelines of Rhode Island, we did have the numbers, and that is the numbers that we'd come up with, two seventy-five.
>
> If this Court is not inclined to follow that—because you can interpret the guidelines various ways.

As you'll see—and I'll tell the Court right away, if you take a look at the exception . . . you'll notice that paragraph three, the optional adjustment—adjustment and the discretion of the Court. . . .

> We did list that down as an adjustment because those are the fixed expenses that Mr. Mazzone currently has an obligation for his current—for his family.
>
> So with that two seventy-five number we do realize that if the term playing with the numbers is correct—we did play with the numbers—we would ask that it be two seventy-five.
>
> Now, the other one is the exceptional circumstances. In this particular case, your Honor, you cannot pay to—five hundred dollars a month without causing an extreme hardship on his family.
>
> What we would suggest is, he—Mr. Mazzone has informed me that two seventy-five he will be able to make.
>
> If the Court is not inclined for that then Mr. Mazzone did tell me that a more appropriate—perhaps an acceptable alternative would be for a sliding scale. Perhaps this year two hundred, next year three hundred, then thereafter three twenty-five.

notice of the hearing of the motion. All memoranda shall reflect the specific hearing date, and, if known, the name of the hearing judge, and an advance copy shall be hand carried to the proper court before the appointed hearing date, except that this requirement shall not apply to circuits other than the first circuit. All motions shall state their statutory or rule authority.

3. HFCR 59(i) states in relevant part:

> **FURTHER HEARING; RECONSIDERATION OF DECISION; NEW TRIALS; RECONSIDERATION OR AMENDMENT OF DECREE, ORDER OR DECISION AND ORDER.**
> * * *
> (i) **Contents.** The motion for further hearing, reconsideration of decision, new trial, or reconsideration, alteration or amendment of decree, order or "decision and order" of the court shall state with particularity the points of law or fact which the moving party contends the court has overlooked or misapprehended, together with a brief argument on the points raised. The motion shall also be supported by a certificate of counsel or of a party if he is not represented by an attorney to the effect that it is presented in good faith and not for purposes

of delay. If a motion is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the motion had not been served. For willful violation of this rule an attorney or party, if he is not represented by an attorney, may be subjected to appropriate disciplinary action.

4. Hawai'i Revised Statutes § 576–21 (1993) states in relevant part:

> **Choice of law.** Duties of support applicable under this law are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought, The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

5. HFCR 59(b)(1) states in relevant part:

> **Reconsideration of Decision.**
> (1) **Grounds.** The reconsideration of a written or oral decision may be granted for good cause to any party on all or part of the issues. Reconsideration of a decision shall be limited to evidence previously adduced.

I did calculate the numbers. If we make it out to two seventy-five a month it comes to approximately twenty thousand for the eighteen year period—excuse me, the next six year period.

If we do it at the scale, it comes out to about twenty-two, twenty-three thousand dollars. But he just cannot do it at five hundred a month, your Honor. He just cannot.

Mazzone's counsel argued that the family court should make a determination based upon Minor's standard of living and alleged that Mother was not a recipient of AFDC. He stated that Mazzone's wife was not employed outside of the home and, if his child support for Minor was not reduced, his other child could not go to preschool.

CSEA argued that the applicable law in URESA cases is that of the jurisdiction where the obligor (in this case Mazzone) is living. CSEA further argued that the child has the right to share in the standard of living of the noncustodial parent if that standard of living is above the poverty level.

The May 16, 1996 Order granted Mazzone's request for child support in the amount of $300.00. On that same date, the family court entered an Order for Income Assignment.

The Findings of Fact and Conclusions of Law state in relevant part as follows:

### FINDINGS OF FACT

\* \* \*

7. Defendant [hereinafter Mazzone] is now married with two minor daughters age 4 and 2.

8. [Mazzone] is the sole income provider for his family.

\* \* \*

10. . . . [A]lthough [Mazzone's] gross monthly income is set at $5737.00, said income is not reflective of [Mazzone's] true income as said amount includes business expense reimbursement of $200.00. In addition, as a condition of his employment, [Mazzone] must pay monthly union dues of $305.00. Therefore, [Mazzone's] monthly income for purposes of support is more accurate at $5232.00.

11. There is no evidence of Mother's . . . Income and Expense statement.

12. [Mazzone] and his spouse purchased a Home in 1993 for $193,000.00, prior to the existing support order. . . . [Mazzone] and his spouse owe a mortgage principle [sic] balance of $163,000.00. The monthly payment is at $1560.34, while utilities, gas, electric and water are $210.00 monthly. Thus, [Mazzone's] housing monthly expenses for himself and his family is fixed at $1770.34.

13. [Mazzone] and his spouse owns [sic] two vehicles, a 1990 pick-up truck and a 1992 Eclipse Sedan. [Mazzone] uses the truck as a condition of his employment. Spouse has use of the sedan for family purposes. Although the total monthly transportation expenses is at $1,025.00, said amount is reasonable under the circumstances. Both vehicles were purchased prior to a support order and both monthly payments total $550.00. Monthly expenses for insurance is $200.00, maintenance at $25.00 and gas at $250.00. Therefore, the Court finds that [Mazzone's] transportation expenses are reasonable and necessary financial obligations for [Mazzone's] employment and maintaining support and well being for his present family.

14. [Mazzone's] older child is enrolled at pre-school. Tuition is currently fixed at $400.00 monthly. Food and juice and other pre-school related expenses are separate and not included in the $400.00 tuition. Next year, [Mazzone's] younger daughter is also scheduled to enroll at the same pre-school.

15. [Mazzone] and his family's personal living expense is set at $1,200.00 monthly. Credit cards debts and other personal debts, aside from the car loans, are fixed at $250.00 monthly.

16. In total, after all tax deductions and necessary living expenditures for his family, [Mazzone] is left with a deficit of $105.00 a month.

17. Still, [Mazzone] has offered on the record to pay $275.00 a month.

* * *

19. The Court finds exceptional circumstances exists warranting modification of the child support obligation of $500.00 to $300.00 in that [Mazzone] does not possess the ability to afford said $500.00 monthly.

20. The Court further finds that support of $300.00 for the Minor is reasonable under the circumstances in this case.

21. The Court further finds that [Mazzone's] current financial obligation was not made to avoid his support obligation to said Minor, in that [Mazzone's] present family and home, and all other major family expenses were incurred prior to the issuance of the existing support order for his present family.

* * *

### CONCLUSIONS OF LAW

1. The Court concludes that evidence of Defendant's present financial obligations to his wife and two (2) children and his present ability to provide child support are relevant factors in determining [Mazzone's] support obligation. *Wright v. Wright*, 1 Haw.App. 581, 623 P.2d 97 (1981); § 580–47, *H.R.S.*

2. The Court concludes that … exceptional circumstances exists [sic] in that at the time … [Mazzone's] financial obligations to his family were established, there were [sic] no support order for Minor, and that consequently Defendant's ability to provide support is a relevant factor in determining the amount of support. § 580–47, *H.R.S.*

3. The Court concludes that by exercise of its discretion, [Mazzone's] familial and financial obligations to his present family and his ability to provide for Minor are exceptional circumstances warranting modification of the monthly child support order of $500.00 issued on March 14, 1996 … to $300.00.

4. The Court further concludes that the State of Rhode Island's guidelines are not appropriate in this case.

**IT IS HEREBY ORDERED** that the above Motion is granted in part and denied in part as follows:

1. The Court finds exceptional circumstances and hereby grants [Mazzone's] request for modification of the monthly child support payment from $500.00 to $300.00 due to exceptional circumstances.

2. The Court denies in part [Mazzone's] request for modification of Defendant's child support based upon the Guidelines of the child's home State of Rhode Island.

### DISCUSSION

#### 1.

Finding of Fact (FOF) No. 19 suggests that the question was whether the $500.00 per month amount should be lowered. This suggestion is wrong. The Hawai'i 1994 ACSG amount was $700.00 per month, and the question was whether that amount should be lowered.

#### 2.

■ HRS § 571–52.5 (1993) mandates that "[w]hen the court establishes or modifies the amount of child support required to be paid by a parent, the court shall use the guidelines established under section 576D–7, except when exceptional circumstances warrant departure." "[T]he guidelines established under section 576D–7" are the Hawai'i 1994 ACSG.

In Mazzone's case, when the family court established the amount of child support to be paid by Mazzone, the Minor's father, HRS § 571–52.5 required the family court to use the Hawai'i 1994 ACSG. It follows that the Rhode Island CSG are not relevant.

■ HRS § 576D–7 permits the family court to depart from the Hawai'i 1994 ACSG only when "exceptional circumstances warrant departure." The amount calculated pursuant to the Hawai'i 1994 ACSG is presumptively the amount that should be ordered and the party seeking a deviation from it has the burden of proof. *Richardson v. Richardson*, 8 Haw.App. 446, 457, 808 P.2d 1279, 1286–87 (1991).

We leave open the question whether the difference, if any, between the cost of living

in Rhode Island and the cost of living in Hawai'i is an exceptional circumstance. In Mazzone's case, no such difference was proven.

### 3.

The Child Support Guidelines Worksheet enclosed within the Hawai'i 1994 ACSG consists of two pages. *Divorce Manual,* at 163–64. The first page has three parts: Part I computes the Primary Child Support; Part II computes the Standard of Living Adjustment (SOLA); and Part III computes the Total Monthly Support Obligation by adding the total of the Primary Child Support obligation and the SOLA obligation. The second page consists of the Statement Regarding Exceptional Circumstances. The party seeking an exceptional circumstance deviation from the amount computed according to Parts I, II, and III on the first page must declare under penalty of perjury the exceptional circumstances.

### 4.

■ Mazzone contends that CSEA's appeal should be dismissed because the following were not submitted into evidence: (a) Mother's pertinent financial information from which the Hawai'i 1994 ACSG amount is to be computed; and (b) a completed Child Support Guidelines Worksheet. Mazzone cites *Doe v. Roe,* 8 Haw.App. 50, 792 P.2d 308 (1990), where this court held that,

> [i]n cases where the record does not include (1) evidence of the relevant financial information from which the amount of child support can be computed pursuant to the Guidelines and (2) the computations made pursuant to the Guidelines (Guidelines' Amount), we will not consider the appellant's contention that the family court decision to award less than the Guidelines' Amount was unsupported by exceptional circumstances. In other words, the Guidelines' Amount must be proven before it can be argued that the amount awarded by the family court is an unauthorized deviation from the Guidelines' Amount.

*Id.* at 56, 792 P.2d at 311.

We conclude that the rule of law stated in *Doe v. Roe* is not applicable in this case because, at the March 14, 1996 hearing, Mazzone agreed that the amount computed in accordance with the Child Support Guidelines Worksheet of the Hawai'i 1994 ACSG was $700 per month.

### 5.

■ The Hawai'i 1994 ACSG specify that the following rules are applicable when calculating monthly income: "*DO NOT* subtract any deduction from income, even if mandatory (e.g., retirement)"; and "*[i]nclude* income from all sources, including but not limited to employment salary or wages, pensions, net rental income, dividends, interest and other net investment income, spousal support, etc., *except public benefits based only on need[.]* " *Divorce Manual,* at 167 (emphases in original). Thus, FOF No. 10 is wrong and Mazzone's monthly income is $5,737.00.

Turning our attention to Mother, the Hawai'i 1994 ACSG states in relevant part as follows:

*Income capacity of a parent:*

> Where a parent is not employed full-time or is employed below full earning capacity, the reasons for this limitation must be considered.

> If such parent's income is limited in order to care for the children to whom the parties owe a joint legal responsibility, at least one of whom is younger than school age (kindergarten), then no additional income will be attributed to such parent.

> If the parent's income is limited for any other reason, then the parent's income will be determined according to his or her income capacity in the local job market, considering both the needs of the children and the reasonable work aspirations of the parent. If any custodial parent (with a school age child or children in school) who is mentally and physically able to work, remains at home and does not work, thirty (or less) hours of weekly earning at the minimum wage may be imputed to that parent's income. HRS Section 576D–7(9)d[;] *Cleveland v. Cleveland,* 1 Haw. App. 187 [616 P.2d 1014] (1980); *Saro-*

**464**

*mines v. Saromines,* 3 Haw.App. 20 [641 P.2d 1342] (1982).

*Divorce Manual,* at 169.

Thus, FOF No. 11 is insufficient. The Hawaiʻi 1994 ACSG required the family court to determine Mother's income, and if she had no income, why not. After calculating Mazzone's child support obligation in accordance with the Child Support Guidelines Worksheet of the Hawaiʻi 1994 ACSG, the family court was then required to consider whether exceptional circumstances warranted a deviation from the Hawaiʻi 1994 ACSG amount, and if so, how much.

When he calculated what his obligation would be under the Rhode Island CSG, Mazzone used $1,200.00 as the amount for Mother's monthly gross income. The record does not reveal the factual basis for this amount.

6.

◼ The following quote is relevant precedent:

The questions are (a) whether there are exceptional circumstances in this case permitting a departure from the [*Guidelines in Determining Child Support (Guidelines*)] so as to allow Father to pay less than the *Guidelines* indicate; (b) if yes, whether Father should be allowed to pay less than the *Guidelines* indicate; and (c) if yes, how much less? We review the family court's answer to question (a) under the right/wrong or de novo standard of appellate review. We review the family court's answer to questions (b) and (c) under the narrowed abuse of allowed discretion standard.

*Mack v. Mack,* 7 Haw.App. 171, 179–180, 749 P.2d 478, 483 (1988).

In FOF No. 19, the family court found that Mazzone did not possess the ability to afford $500.00 per month in child support. The family court based that finding on its consideration of the amount of Mazzone's expenses, including his debts. However, the Hawaiʻi 1994 ACSG state that "[o]rdinarily, the existence of heavy debts will not constitute extraordinary circumstances." *Divorce Manual,* at 174.

When computing SOLA, the Child Support Guidelines Worksheet of the Hawaiʻi 1994 ACSG, at line 15, allows for a subtraction of the Primary Child Support payable for other children. *Divorce Manual,* at 163. The maximum is $250.00 per child or, in Mazzone's case, $500.00. *Id.* at 162.

The Hawaiʻi 1994 ACSG state in relevant part as follows:

These Guidelines are child centered. . . . The underlying principles are as follows:

1. Parents are entitled to keep sufficient income for their most basic needs and to facilitate continued employment.

2. Until the basic needs of children are met, parents may not retain any more income than required to provide the bare necessities for their own self support.

*Id.* at 166.

It is true that the Hawaiʻi 1994 ACSG lists the following as an exceptional circumstance: "[o]ther child support obligations of a parent that render him/her unable to pay the Guideline's level of child support for the subject children." *Id.* at 174. However, this ambiguous exceptional circumstance must be interpreted in the light of the following relevant considerations: (a) the mandate in HRS § 576D–7(b)(3) (1993) that the Hawaiʻi 1994 ACSG shall be "[a]pplied to ensure, at a minimum, that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent"; and (b) the exceptional circumstance listed in the Hawaiʻi 1994 ACSG "[w]here the total monthly-child support obligation (Line 19) is greater than 70% of the parent's available income for primary support (Line 4)." *Divorce Manual,* at 174.

Moreover, the "[o]ther child support obligations" exceptional circumstance is limited to (a) "child support obligations" and not family obligations; and (b) "obligations" and not discretionary choices. For example, it does not authorize Mazzone to use his decision to pay $400.00 per month preschool tuition for an older child as a basis for reducing

his Hawai'i 1994 ACSG child support payable for Minor.

### 7.

We conclude that the evidence in the record does not support a conclusion that the following two expenses have priority over Minor's right to the amount of child support calculated pursuant to the Hawai'i 1994 ACSG: (a) FOF No. 13 (the expenses for the second vehicle); and (b) FOF No. 14 (the older child's preschool expenses). Therefore, neither supports a finding of an exceptional circumstance.

 We further conclude that the priority in time rule stated in Conclusion of Law (COL) No. 2 is invalid and does not create an exceptional circumstance. A parent's remarriage does not reduce his or her legal obligation to support, educate, and maintain his or her children from a previous relationship. *Mack*, 7 Haw.App. at 180, 749 P.2d at 483. Similarly, even assuming Mazzone became obligated to support his family before he was aware of his obligation to support Minor,[6] that fact does not cause his obligations to his family to be an exceptional circumstance.

 Finally, we conclude that the part of COL No. 3 that states that the decision whether a fact or factor is an exceptional circumstance is a matter of discretion is wrong.

### CONCLUSION

Accordingly, we:

(1) Vacate all of the family court's May 16, 1996 Order Granting in Part and Denying in Part Defendant's Motion for Reconsideration and/or Post–Decree Relief and Modification of Child Support to Reflect the Guidelines of the Child's Home State of Rhode Island and/or Exceptional Circumstances, except that we affirm item 2 of the order which states, "The Court denies in part Defendant's request for modification of Defendant's child support payment based upon the Guidelines

of the child's home state of Rhode Island"; and

(2) Vacate all of the family court's July 17, 1996 Findings of Fact, Conclusion of Law, and Order Granting in Part and Denying in Part Defendant's Motion for Reconsideration and/or Post–Decree Relief and Modification of Child Support to Reflect the Guidelines of the Child's Home State of Rhode Island and/or Exceptional Circumstances, except that we affirm item 2 of the order which states, "The Court denies in part Defendant's request for modification of Defendant's child support payment based upon the Guidelines of the child's home State of Rhode Island."

We remand this case to the family court for further proceedings consistent with this opinion.

---

6. When the court asked Mazzone if he "had any relationship with [Minor during] the past twelve years[,]" Mazzone's response was, "Yeah."