749 P.2d 478 (1988)
Carole Ann MACK, Plaintiff-Appellant,
v.
Robert Whitcomb MACK, nka Robert Sumner-Mack, Defendant-Appellee.
No. 12085.
Intermediate Court of Appeals of Hawaii.
January 29, 1988.
Timothy Luria (Painter & Luria, of counsel), on the briefs, Honolulu, for plaintiff-appellant.
Diana L. Van De Car (Case & Lynch, of counsel), on the brief, Hilo, for defendant-appellee.
Before BURNS, C.J., and HEEN and TANAKA, JJ.
BURNS, Chief Judge.
Plaintiff Carole Ann Mack (Mother) appeals the family court's March 9, 1987 order which amended its May 13, 1982 consent decree of divorce by reducing defendant Robert Sumner-Mack's (Father's) obligation to contribute to the support, education, and maintenance of the parties' two adult children who are attending the University of Pennsylvania (UP) from $400.00 per child per month plus one-half of their educational expenses plus medical insurance and all of their uninsured medical and dental expenses to $150.00 per child per month plus medical insurance and all of their uninsured medical expenses.
We vacate the family court's March 9, 1987 order and remand for further proceedings consistent with both this opinion and the applicable Guidelines in Determining Child Support (Guidelines),[1] promulgated by the Board of Family Court Judges pursuant to Hawaii Revised Statutes (HRS) § 576D-7 (Supp. 1986). In our view, this *479 case demonstrates the wisdom of HRS § 576D-7 and the Guidelines.
Father and Mother were married on July 28, 1962. They have two children, Danielle, born on December 6, 1965; and Laura, born on June 6, 1967. Pursuant to an agreement between the parties, a consent decree of divorce was entered on May 13, 1982. At the time of the divorce, Mother was unemployed, but receiving interest of $250.00 per month, and Father's gross income was $3,310.56 per month. The decree required Father to pay Mother alimony of $1,200.00 per month for four years, child support of $150.00 per child per month for four years, and thereafter to pay child support of $400.00 per child per month "continuing as to each child until said child reaches age 18 and so long thereafter, including summer months, as said child is pursuing a high school diploma or is enrolled as a full-time student in an accredited educational or vocational training institution and under age 23, or until the further order of the Court". In relevant part, the decree further states as follows:
5. Higher Education Expenses. Post high school educational expenses for the children of the parties shall be borne equally by the parties.
* * * * * *
10[.] Medical/Dental. So long as he has child support obligations, Husband shall provide medical insurance for the benefit of the children of the parties, and he shall be responsible for all uninsured medical and all dental expenses for said children.
On February 3, 1984 Father filed a motion seeking modification of the May 13, 1982 divorce decree alleging and praying in relevant part as follows:
Change in the circumstances of the parties require that existing orders regarding support payments be modified as follows:
1. That alimony payments be reduced to $575 per month; and
* * * * * *
4. That [Father] shall be responsible for educational expenses of minor children. Said responsibility to be limited to [Father's] signature on educational loan for not more than $7,500 per year total for both children, and [Mother] shall be responsible for any expenses over this amount.
At that time, Father's gross income was $3,707.00 per month and Mother's was $1,419.96 per month. Danielle was 18 and Laura was 16 years of age.
In April 1984 Father married Nan Sumner-Mack (Wife)[2] who has custody of a son from a prior marriage (Stepson). At the time of trial in October 1986, Stepson was seven years of age. Wife was not receiving any child support from Stepson's father, and the record does not reveal the reason.[3]
On September 12, 1984 the family court entered a stipulated order which reduced Father's obligation to pay alimony to $750.00 per month for a period of two years and four months commencing February 1, 1984. The child support, medical, dental, and educational expense provisions were not changed.
On June 3, 1986 Father filed a motion seeking modification of the May 13, 1982 divorce decree alleging and praying in relevant part as follows:
1. Change in the circumstances of the parties require that existing orders regarding support payments be modified as follows:
a. That I be required to pay only $150 per month, per child for child support and education, to be paid directly to each child, said support to continue so long as each child is enrolled on a full-time basis in an accredited college or university and *480 until each child graduates or attains age 22, whichever occurs first. Further, that I not be required to pay any additional sums over and above the $150 per month for college expenses.
At that time, Father's gross income was $4,083.00 per month, Mother's was $1,705.00 per month, and Wife was unemployed. Danielle was 20 and Laura was 18 years of age.
On October 17, 1986 Mother filed a motion seeking arrearages, security, sequestration, and wage assignment.
On March 9, 1987 the family court entered in relevant part the following findings of fact:
B. CURRENT DISPUTES
6. The parties are the parents of Laura Mack and Danielle Mack. Both Laura and Danielle have attained the age of majority, and are attending the University of Pennsylvania. Both girls board full time at the University of Pennsylvania during the academic school year, although Mrs. Mack's residence is near enough to the University to allow them to reside at home to reduce their expenses. Carole Ann Mack is currently employed at the University of Pennsylvania at a monthly salary of $1,575.00. Carole Ann Mack also attends the University of Pennsylvania as a doctoral student working towards her Ph.D. in Science Education.
7. The total expenses, including tuition and room and board, estimated by the University of Pennsylvania for the 1986 to 1987 school year for Laura Mack and Danielle Mack are $17,550.00, and $17,750.00, respectively. Both girls have had private telephones and leased refrigerators installed in their dormitory rooms, an unnecessary expense which is not included in their total expenses estimated by the University. To meet her educational expenses, Laura Mack is eligible for $14,150.00 of financial aid. Similarly, Danielle Mack is eligible for $14,150.00 in financial aid benefits.
8. Both girls were employed during the summer prior to the 1986-87 school year. The University of Pennsylvania financial aid program takes into consideration the student's summer savings and other assets in determining the amount of financial aid to be awarded, as the University expects that the students will contribute to their own academic expenses. The student assets listed on the University of Pennsylvania financial aid notice for Laura K. Mack amount to $1,500.00. According to the University's academic year expense budget for Laura Mack, and after taking into consideration the student's own assets, the parental contribution necessary to meet the total expense of $17,550.00 is $1,900.00. Similarly, the student assets listed on the financial aid notice to Danielle Mack amount to $1,700.00. The parental contribution necessary to meet the total expense of $17,750.00 for Danielle Mack is $1,900.00, after taking into consideration the student's own assets. The "parental contribution" referred to is the University of Pennsylvania's estimate of what amounts must be contributed by the student's parents to meet the student's total expenses, including room and board, for the academic year.
* * * * * *
11. Dr. Sumner-Mack married Nan Sumner-Mack after his divorce. Nan Sumner-Mack's child lives with Dr. Sumner-Mack and attends elementary school. At the time of the entry of the Stipulation filed in this action in 1984, Dr. Sumner-Mack was already remarried, and was employed by the State of Hawaii Department of Health. At that time, Nan Sumner-Mack was employed at the University of Hawaii at Hilo. The combined annual income of Dr. Sumner-Mack and his wife at that time was $69,792.00. Also at that time, Carole Mack was employed earning a monthly salary of $1,196.00. At the time of the Stipulation, Danielle Mack and Laura Mack were attending high school, and residing with Carole Mack.
12. In February of 1985, Dr. Sumner-Mack accepted a position with U.S.A.I.D. in Africa. Nan Sumner-Mack left her *481 teaching position with the University of Hawaii at Hilo to accompany Dr. Sumner-Mack to Africa. Dr. Sumner-Mack returned to Hilo in April of 1986. His current annual salary is substantially less than he was making while working with U.S.A.I.D. Since returning from Africa, Nan Sumner-Mack has been unable to obtain regular employment, although she has made numerous efforts to seek employment, and both she and her son are being supported by Dr. Sumner-Mack.
and the following conclusions of law:
2. Since the date that the 1984 Stipulation was entered into this action, the circumstances of the parties have changed materially. The income available to Dr. Sumner-Mack has been reduced by the non-employment of his current wife, while Carole Mack's income has increased by approximately $4,500.00 per year. The two children of the parties have attained the age of majority, and no longer reside with Mrs. Mack during the academic school year. Both Danielle Mack and Laura Mack are employed during the summer months and are capable of and in fact are assisting with the financing of their own college educations. Taking into consideration the changed circumstances of the parties, as well as all of the circumstances required to be considered under Hawaii Rev.Stat. § 580-47, as amended, the obligation of Dr. Sumner-Mack for the support and education of Danielle Mack and Laura Mack should be reduced retroactively to the time that he first sought Court relief to $150.00 per month, per child, for a total of $300.00 per month, plus $50.00 per month for medical insurance premiums and uninsured medical expenses.
3. The Plaintiff has requested that the guidelines for child support, promulgated by the Hawaii courts to be effective on October 20, 1986, be applied in this instance. The Court notes that Robert Sumner-Mack's motion would have been heard prior to October 20, 1986, but for scheduling difficulties incurred by the parties. Taking into consideration that these are adult children who are attending college and are partially providing for their own support, the relative abilities of the parties to assist their adult children, and all of the facts in this case, the Court will not apply the new guidelines in this instance.
and an order for relief after decree:
1. The Defendant is hereby ordered to make payments of $300.00 per month for the support, maintenance and education of Danielle Mack and Laura Mack, payable directly to CAROLE ANN MACK. These payments shall be made in two equal monthly installments of $150.00 each. The support hereby ordered is payable in full until Laura Mack attains age 23, provided Laura Mack and Danielle Mack continue to attend college or another post-high school educational institution on a full-time basis, or until further order of this Court.[4] This Order shall take effect on June 3, 1986.
2. The Defendant is ordered to pay $50.00 per month, for the cost of medical insurance, and any medical expenses not covered by insurance. The payments shall be made in two equal monthly installments of $25.00 each, payable to Carole Mack until Laura Mack attains the age of 23, provided said children attend college or another post-high school educational institution on a full-time basis. This Order shall take effect [on] June 3, 1986.
* * * * * *
8. This Order super[s]edes all prior orders entered in this action regarding the support obligations of Robert Sumner-Mack.
(Footnote added).
In other words, at the time of the divorce in May 1982, Father agreed to pay the *482 children's medical insurance and all of their uninsured medical and dental expenses plus 45.3 percent of his monthly gross income as alimony and child support for four years and thereafter to pay the children's medical insurance and all of their uninsured medical and dental expenses plus 24.2 percent of his monthly gross income as child support.[5] Now, in March 1987, after Father has voluntarily legally obligated himself to support Wife,[6] and possibly Stepson,[7] and when Father's monthly gross income is $4,316.32, Mother's monthly gross income is $1,583.33, and the two children are undergraduates at UP where their yearly school expenses exceed $8,500 per child, the family court decided that Father's just and equitable share of the total cost of the two children's support, education, and maintenance is only the cost of the children's medical insurance and all of their uninsured medical expenses plus $300.00 per month or 6.95% of Father's monthly gross income.
The fact that on September 12, 1984 Wife was employed and the combined annual salary of Father and Wife was in excess of $5,166.66 per month is irrelevant because the September 12, 1984 stipulated order did not change Father's obligation to pay child support as previously determined in the May 13, 1982 divorce decree. Under the facts of this case, the relevant dates for comparison are May 13, 1982, June 3, 1986, and March 9, 1987.
The fact that Father's current annual salary is substantially less than he was making while working with U.S.A.I.D. is irrelevant because he commenced working with U.S.A.I.D. in February 1985 and terminated in April 1986. That period of time is irrelevant.
The parties' situations and monthly incomes on May 13, 1982, February 3, 1984, September 12, 1984, June 3, 1986, and March 9, 1987 were as follows:

 Divorce Stipulated
 Decree Motion Order Motion Order
Date 05/13/82 02/03/84 09/12/84 06/03/86 03/09/87
Mother $250.00 $1,419.95 $1,419.95 $1,705.00 $1,705.00
Father $3,310.56 $3,707.00 $3,707.00 $4,083.00 $4,316.32
Children Both in high Both in high One high Both in college Both in college
 school school school senior;
 one
 college
 freshman
Father Unmarried Unmarried Remarried; Remarried; Remarried;
 stepson stepson stepson
Wife $1,583.33 Unemployed Unemployed

There has been a substantial and material change in the relevant circumstances *483 from May 13, 1982 to June 3, 1986 and March 9, 1987. Davis v. Davis, 3 Haw. App. 501, 653 P.2d 1167 (1982). The issue is whether there should be a reduction of the amount Father was previously ordered to periodically pay for the children's support, education, and maintenance. The family court answered yes. Its decision is reviewable under the abuse of discretion standard. Id. When we decided Davis, the family court's discretion was "wide". That discretion was substantially narrowed, however, when the Board of Family Court Judges promulgated its Guidelines on October 20, 1986.[8]
In our view, the family court's decision not to apply the October 20, 1986 Guidelines was wrong. Even when the Guidelines are applied, however, HRS § 571-52.5 (Supp. 1986) permits the family court to depart from the Guidelines "when exceptional circumstances warrant departure." The questions are (a) whether there are exceptional circumstances in this case permitting a departure from the Guidelines so as to allow Father to pay less than the Guidelines indicate; (b) if yes, whether Father should be allowed to pay less than the Guidelines indicate; and (c) if yes, how much less? We review the family court's answer to question (a) under the right/wrong or de novo standard of appellate review. We review the family court's answer to questions (b) and (c) under the narrowed abuse of allowed discretion standard. Since in this case our answer to question (a) is no, we do not reach questions (b) and (c). The only material changes that have occurred from May 13, 1982 to June 3, 1986 are as follows: 1) Since April 1984 Father has a stepson, who is a minor and who is not receiving child support from his father, and a wife who has been unemployed since February 1985; 2) Father's gross income has increased; 3) Mother's gross income has increased; and 4) the children's educational expenses have increased.
Since the formula of the October 20, 1986 Guidelines considers changes 1, 2, and 3, those changes cannot be classified as "exceptional circumstances". Under the formula, if Father is legally obligated to support Stepson, then Stepson's presence decreases Father's income available for the Standard of Living Adjustment, thus decreasing the amount Father has available for child support. The October 20, 1986 Guidelines ignore the presence of an unemployed new spouse and the unemployed new spouse's expenses presumably on the ground that a parent's remarriage should not reduce his or her legal obligation to support, educate, and maintain his or her children from previous relationships. Change 4 is the only change that the formula of the October 20, 1986 Guidelines does not consider. Even if change 4 is an exceptional circumstance, however, it justifies more, not less, child support than the formula calls for.
In his answering brief father states in relevant part as follows: "[T]he support duty owed by Husband to Laura and Danielle is far different from the duty owed to them when they were minors." We disagree. Under HRS § 580-47 (1985) and the May 13, 1982 consent decree of divorce, the duty owed by Father to Laura and Danielle since they became adults and while they are under age 23 and attending college or another post-high school educational institution on a full time basis is basically the same as it was when they were minors.
In his answering brief, Father further states in relevant part as follows:
Laura and Danielle have chosen a very expensive college, and have made no real effort to minimize their financial needs. They are boarding at a school which is a *484 20 minute drive from their home. They are spending substantial amounts of money on items that are hardly necessities. They have apparently not taken advantage of one of the loan programs available to them. It does not appear that their work study funds are being applied to their college costs. They have not even tapped the $6,000.00 in the custodial account Wife holds for them.
As Husband's second wife testified at the hearing in this case, she and Husband were going into debt steadily each month as a result of their poor financial situation, even with Husband's child support payments reduced to $300.00 per month. It is extremely unfair for a parent to be reduced to poverty because his adult children refuse to recognize the strains placed on his financial situation and modify their behavior accordingly.
Apparently the family court did not agree with all of Father's representations and argument because, although it concluded that some of Laura's and Danielle's expenses are "unnecessary", it did not conclude that their other expenses, including the necessary expenses of their attendance at UP, are unreasonable under the circumstances. Moreover, in the proceedings below, Father did not question the reasonableness under the circumstances of the necessary expenses of the children's matriculation at UP. Likewise, in his answering brief, Father states in relevant part as follows: "Because these are adult children who are capable of contributing towards their own financial support, because [Father's] ability to pay has decreased, and because [Mother's] has increased, there was no abuse of discretion." Therefore, for purposes of this appeal, all of the expenses of the children's attendance at UP that the family court did not find to be unnecessary are necessary and reasonable under the circumstances.
According to Father's Exhibit 6 in evidence, the ingredient expenses for the 1986-87 school year are as follows:

 Item Laura Danielle
 Tuition waiver[9] $7,694 $7,694
 Penn grant $1,356 $1,006
 Student $2,800 $3,250
 Parent $1,900 $1,900
 Student loan $3,800 $3,900

The above amounts are the UP's estimated budgets for determining eligibility for financial aid. The amounts expected from the student are to come from the student's savings or to be earned by the student during the school year and the vacation breaks. The expenses covered by these budgets, however, appear to be only those incurred during the school year and not the vacation breaks. Even assuming that these estimates accurately include all of the children's necessary and reasonable under the circumstances expenses during the school year and that the children can afford to make the payments allocated to them, it is the parents' responsibility to pay for the amounts attributed to student loans. Thus, under these estimates, the minimum parental contributions for the school year and vacation breaks are the totals of the following:

 Item Laura Danielle
 Student loan $3,800 $3,900
 Parent $1,900 $1,900
 Vacation breaks ? ?
 ______ ______
 Total Per Year $5,700+ $5,800+
 Total Per Month $ 475+ $ 483+

Therefore, the family court's finding that only a $1,900.00 per child parental contribution is necessary to meet the two children's total school year expenses is clearly erroneous.[10]
Accordingly, we vacate the family court's March 9, 1987 order and remand this case *485 to the family court for further proceedings consistent with both this opinion and the applicable Guidelines in Determining Child Support promulgated by the Board of Family Court Judges pursuant to HRS § 576D-7.
NOTES
[1] The original October 20, 1986 Guidelines were amended effective July 9, 1987, and future amendments are expected. To the extent possible, the family court's order should be worded so that relevant future amendments to the Guidelines automatically result in appropriate amendments to the obligor's child support obligation as ordered by the family court.
[2] Father's answering brief states, "When Husband filed his [February 3,] 1984 Motion, he had already remarried." However, Father testified that he remarried in "April of '84".
[3] To the extent that Wife's failure to receive reasonable child support payments from her son's legal father is caused by her failure to exert reasonable collection efforts, then she and her son, and not her husband's two daughters from a prior marriage, should suffer the consequences of her failure.
[4] This provision unreasonably conditions defendant father's obligation to pay child support to each child on only Laura's age and on both children's continuation of their education. Danielle may receive support after her 24th birthday if Laura does not drop out of school before then. Laura may receive support up to her 23rd birthday if Danielle does not drop out of school before then.
[5] HRS § 577-7(a) states in relevant part: "All parents and guardians shall provide, to the best of their abilities, for the discipline, support, and education of their children."

HRS § 580-47(a) states in relevant part:
Upon granting a divorce, * * * [p]rovision may be made for the support, maintenance and education of an adult or minor child and for the support, maintenance and education of an incompetent adult child whether or not the application is made before or after the child has attained the age of majority.
[6] HRS § 572-24 (1985) states as follows:

Spousal liabilities. Both spouses of a marriage, whether married in this State or in some other jurisdiction, and residing in this, shall be bound to maintain, provide for, and support one another during marriage, and shall be liable for all debts contracted by one another for necessaries for themselves, one another, or their family during marriage; provided that when a support or maintenance obligation, however designated, is imposed upon a spouse under chapter 580 or any other law, the amount of such obligation shall be determined by the appropriate court on the basis of factors enumerated in section 580-47(a).
[7] HRS § 577-4 (1985) states as follows:

Stepparent; when required to support stepchild. A stepparent who acts in loco parentis is bound to provide, maintain, and support the stepparent's stepchild during the residence of the child with the stepparent if the legal parents desert the child or are unable to support the child, thereby reducing the child to destitute and necessitous circumstances.
[8] A court abuses its allowed discretion when it clearly exceeds the bounds of reason. See Yoshii, Appellate Standards of Review in Hawaii, 7 U.Haw.L.Rev. 273 (1985). There are, however, gradations of discretion depending on the applicability of limiting rules of law that must be followed by the court when exercising its discretion. See Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L.Rev. 37 (1971). As specific rules of law are made applicable to the issue being decided, the issue becomes less a matter of or a question of law and the applicable standard of or question on review becomes less whether the court clearly exceeded the bounds of reason and more whether the court was right or wrong.
[9] The children are entitled to a 75 percent tuition waiver because their mother is an employee of UP.
[10] If the family court concludes that $1,900 per child per year is the maximum that the parents can reasonably afford to pay for their children's expenses while attending college, then a fortiori it also concludes that all expenses in excess of $1,900 per child per year are unreasonable under the circumstances.