41 P.3d 720

**STATE of Hawai'i, CHILD SUPPORT ENFORCEMENT AGENCY, Petitioner–Appellee,**

**and**

**Jane Doe, Petitioner–Appellant,**

v.

**John DOE, Respondent–Appellee.**

No. 23057.

Intermediate Court of Appeals of Hawai'i.

Nov. 26, 2001.

Reconsideration Denied Dec. 10, 2001.

As Amended Dec. 10, 2001.

Certiorari Denied Jan. 11, 2002.

Gregg Young, for petitioner-appellant.

Michael F. O'Connor (Tam, O'Connor, Henderson, Taira & Yamauchi), for respondent-appellee.

Margaret K. Masunaga, Corporation Counsel, Family, Support Division, Kona Branch, for petitioner-appellee.

WATANABE, Acting Chief Judge, LIM, and FOLEY, JJ.

Opinion of the Court by LIM, J.

Petitioner–Appellant Jane Doe (Mother) appeals the March 9, 1999 decision and order

of the family court of the third circuit,[1] and the court's December 20, 1999 order denying her March 19, 1999 motion for reconsideration of its decision and order. She also appeals the court's May 3, 1999 judgment and the notice of entry of judgment of even date.[2] We affirm.

## I. BACKGROUND.

A son (Child) was born to Mother on April 24, 1985. Mother, who is fifty-one years old, has never been married and has no children other than Child. On December 12, 1997, Petitioner–Appellee Child Support Enforcement Agency, State of Hawai'i (CSEA), filed a petition for paternity on behalf of Child, pursuant to application by Mother. The petition sought adjudication of Child's paternity and other relief pursuant to Hawai'i Revised Statutes (HRS) chapter 584 (1993 & Supp. 2000) (entitled, "Uniform Parentage Act"). John Doe was named as the defendant in the petition. During a brief interlude, Mother and John Doe had engaged in sexual intercourse once or twice. The petition prayed, *inter alia*, that John Doe be adjudged the father of Child, that Mother be awarded custody of Child and that John Doe "be ordered to pay for the support, maintenance and education of [Child] from the time of birth[.]"

A February 27, 1998 order directed Mother, Child and John Doe to submit blood specimens for a genetic paternity test. The test did not exclude John Doe as Child's father; indeed, it set the probability that John Doe was Child's father at 99.94%, as compared to an untested, unrelated man of the same race. During a December 16, 1998 hearing,[3] the parties stipulated that John Doe (Father) is Child's natural father. Father did not contest Mother's custody of Child. Father did not request visitation with Child.

On January 29, 1999, trial was held on the question of child support. Father, sixty-six years old and currently unmarried with three grown children, testified that up until the time of the petition for paternity, he did not know that Child had been born. Maternal grandmother disputed this, testifying that she had once shown Child to Father, about two weeks after his birth. On this issue, Mother had testified in her deposition that, "I don't think he even knew." The court ultimately found, however, that Father knew about the pregnancy and birth.

Apparently, Father did not communicate with Mother after their brief encounter, save for a 1985 Christmas card. Mother confirmed that she and Father had not spoken since she was about five months into the natural aftermath of their affair. She had tried to telephone Father once in 1991. Father implied that Mother had told him, during her gravidity, that he would not have to support the child. Father expressed dismay at the prospect that his family and his business associates might find out about Child.

Father reported, on his federal income tax returns for the years 1985 to 1997, the following incomes:

| Year | Income |
| --- | --- |
| 1985 | $259,000 |
| 1986 | $313,000 |
| 1987 | $392,500 |
| 1988 | $610,885 |
| 1989 | $827,945 |
| 1990 | (Tax return not in the record.) |
| 1991 | $521,200 |
| 1992 | $1,046,100 |
| 1993 | $747,850 |
| 1994 | $772,115 |
| 1995 | $773,538 |
| 1996 | $640,680 |
| 1997 | $683,680 |

Father, the owner of a corporation with several subsidiaries, testified extensively about

---

1. Unless otherwise stated, all actions of the family court of the third circuit relevant to this appeal were taken by the Honorable Victor M. Cox.

2. The May 3, 1999 judgment, by its terms, was entered pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 58 (1999). The HRCP are, however, inapplicable to proceedings in the family courts. HRCP Rule 81(a)(4) (1999). The judgment was for the reimbursement of pretrial child-rearing expenses previously provided for in the court's March 9, 1999 decision and order, a provision in the decision and order that Jane Doe also specifically appeals. The appeal of the judgment thus adds nothing to our consideration of or decision on this appeal and will not be further discussed.

3. The Honorable Colin L. Love presided over the December 16, 1998 hearing.

offsetting—and in his opinion, overwhelming—personal and business debts and obligations, both established and contingent. However, the court noted in its decision and order that Father "has some $337,000.00 in net liquid assets."

Mother testified that when Child was about a year old, she sold her home in Honolulu, moved to California, and lived off the proceeds of the sale, approximately $100,000. She could not recall whether the $100,000 was before or after taxes. While there, she obtained a real estate license, but worked "[a] little bit, not much." After three years in California, she and Child returned to Hawai'i with approximately $10,000 left from the sale of the house. From 1990 to 1998, Mother earned between $24,000 and $28,000 annually, working as a teacher. Mother maintained that all, or all but "[v]ery, very little[,]" of her teaching salary was spent on Child. At the time of the trial, she had no significant assets.

Mother presented copious evidence at trial that Child, a student in the public schools, is polite, motivated and successful, academically and otherwise. Mother also presented evidence that she and her brother (Uncle) had enjoyed a privileged standard of living during their upbringing. So had the children of Uncle during theirs.

Mother asked for $1,128,298 in past child support, based upon the applicable[4] child support guidelines as applied to her and Father's past salaries. The court decided, however, that pursuant to HRS § 584–15(d) (Supp.2000),[5] Father's liability for past child support would be limited to a portion of the expenses actually incurred on Child's behalf. The court held that Mother had the burden of proof as to the amount of those expenses.

The court first found that Mother had not provided sufficient evidence of Child's expenses for the year between his birth and their move to California, or for their three years in California.

As for subsequent years, the court did not believe Mother's testimony that she had spent virtually all of her teacher's salary on Child. The court found, instead, that Mother had proved that she had spent $182,000 on her and Child's expenses since returning to Hawai'i from California,[6] and that half of that, or $91,000, would be attributed to Child's expenses. The court concluded, finally, that Father would pay $61,000, or about 67%, of the $91,000 in Child's past expenses that Mother had proved.

For current child support payments, Mother argued that the November 1, 1998 amended child support guidelines (ACSG), as applied to Father's approximate average income as shown on his 1997 personal income tax return, dictated that Father should pay $6,320 per month in child support.[7]

However, the court departed from the ACSG, holding instead that the appropriate standard of living for Child would result in monthly expenses for Child equal to 50% of the $1,091.82 that Mother spent on general

---

4. It should be noted that the first child support guidelines were adopted on October 20, 1986. *Mack v. Mack,* 7 Haw.App. 171, 172 n. 1, 749 P.2d 478, 478 n. 1 (1988). For her calculation of past child support for the period before the adoption of the child support guidelines, Mother utilized the "schedules of temporary family support and temporary spousal support/alimony" adopted by the family court of the first circuit on July 1, 1983 as guidance in issuing *pendente lite* support orders.

5. Hawaii Revised Statutes (HRS) § 584–15(d) (Supp.2000) provides, in relevant part, that "[t]he court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just."

6. The court arrived at the $182,000 figure by taking the average of Mother's $24,000 to $28,000 annual gross income for the years 1990 to 1998, or $27,000, and applying to that average Mother's current spendable income to gross income ratio of approximately 75%, to arrive at a figure of $20,250 available for expenditure annually. Over the nine years in question, a rounded total expense figure of $182,000 resulted.

7. Mother argues on appeal that the current child support amount should be $7,220 per month instead of the $6,320 per month she argued in support of below. Mother also asserts on appeal that the child support enforcement agency submitted a child support guidelines worksheet for current child support, based upon Father's December 1998 income and expense statement, that yielded a current child support obligation of $4,490 per month. However, the worksheet was not entered into evidence and was returned, and is not in the record. Father did not submit any child support guidelines worksheets.

expenses[8] for her household each month plus 60% of the $1,675.00 that Father spent on personal expenses each month (not including certain expenses not applicable to Child; specifically, life insurance and dependent care).[9] This totaled about $1,550 per month. Based on the ratio of the net incomes of Mother and Father, the court further decided that Father should pay for 92% of the appropriate standard of living determined by the above formula. The court thereupon determined that Father would pay a rounded $1,430 per month in current child support.[10]

## II. ISSUES PRESENTED.

Mother presents the following issues on appeal: (1) whether the court erred in its calculation of past child support; and (2) whether the court erred in its calculation of current child support.

## III. DISCUSSION.

Relevant statutes governing child support include HRS § 571–52.5 (1993): "When the court establishes or modifies the amount of child support required to be paid by a parent, the court shall use the guidelines established under section 576D–7,[11] except when exceptional circumstances warrant departure." (Footnote added.) The ACSG utilize a child support guidelines worksheet keyed to the respective net incomes of the parties to come up with a current child support amount:

The Child Support Guidelines Worksheet enclosed within the Hawai'i 1994 ACSG consists of two pages. [2 Hawaii Inst. for Continuing Legal Education, *Hawaii Divorce Manual* § 17], at 163–64. The first page has three parts: Part I computes the Primary Child Support; Part II computes the Standard of Living Adjustment (SOLA); and Part III computes the Total Monthly Support Obligation by adding the total of the Primary Child Support obligation and the SOLA obligation. The second page consists of the Statement Regarding Exceptional Circumstances. The party seeking an exceptional circum-

---

**8.** Mother's income and expense statement included a category of general monthly expenses, consisting of subcategories for rent, utilities, car expenses and insurance, insurance other than car insurance, installment debt, support obligations under prior court order, and payments to other dependents. Mother listed $625 for rent, $190 for utilities, $225 for car expenses and insurance, and $51.82 for insurance other than car insurance.

**9.** Father's income and expense statement included a category of personal monthly expenses, consisting of subcategories for food, clothing, medical and dental, laundry and cleaning, personal articles, recreation, school (including food), household, bus, life insurance premium, and payment to others for dependent care. Father listed $800 for food, $100 for clothing, $200 for medical and dental, $100 for laundry and cleaning, $250 for personal articles, $225 for household, $985 for life insurance premium, and $300 for payment to others for dependent care.

**10.** The court also ordered that Mother continue to cover Child under her medical insurance, but that Father pay 92% of any medical, dental or vision costs not covered by insurance.

**11.** HRS § 576D–7 (1993 and Supp.2000) provides, in relevant part:

**Guidelines in establishing amount of child support.** (a) The family court, in consultation with the [child support enforcement] agency, shall establish guidelines to establish the amount of child support when an order for support is sought or being modified under this chapter [HRS chapter 576D, entitled "Child Support Enforcement"]. The guidelines shall be based on specific descriptive and numeric criteria and result in a computation of the support obligation.

The guidelines may include consideration of the following:

(1) All earnings, income, and resources of both parents; provided that earnings be the net amount, after deductions for taxes, and social security. Overtime and cost of living allowance may be deducted where appropriate;

(2) The earning potential, reasonable necessities, and borrowing capacity of both parents;

(3) The needs of the child for whom support is sought;

(4) The amount of public assistance which would be paid for the child under the full standard of need as established by the department;

(5) The existence of other dependents of the obligor parent;

(6) To foster incentives for both parents to work;

(7) To balance the standard of living of both parents and child and avoid placing any below the poverty level whenever possible;

(8) To avoid extreme and inequitable changes in either parent's income depending on custody[.]

stance deviation from the amount computed according to Parts I, II, and III on the first page must declare under penalty of perjury the exceptional circumstances. *CSEA v. Mazzone,* 88 Hawai'i 456, 463, 967 P.2d 653, 660 (App.1998). The ACSG give examples of "exceptional circumstances" warranting departure from the amount of child support calculated through the ACSG. Among the examples given is: "A monthly income that would result in a computation higher than the children's reasonable needs." We have interpreted this to mean, more precisely, "A monthly income that would result in a computation higher than the reasonable needs of the children *based on the relevant standard of living.*" *Nabarrete v. Nabarrete,* 86 Hawai'i 368, 371, 949 P.2d 208, 211 (App. 1997) (emphasis in the original).

On the other hand, HRS § 584–15(d) provides, in pertinent part: "The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just."

*A. Past Child Support.*

Mother contends on appeal that the determination of past, as well as current, child support was controlled by HRS § 571–52.5, and therefore Father should reimburse her the amount he would have paid over the years if child support had been determined by the ACSG. Father agrees that HRS § 571–52.5 governs current child support, but argues that the court did not err in applying HRS § 584–15(d) to past support.

■ The meaning of a statute is a question of law that we review de novo. *Gardens at West Maui v. County of Maui,* 90 Hawai'i 334, 339, 978 P.2d 772, 777 (1999) (citation omitted).

■ Mother argues that the above-quoted sentence of HRS § 584–15(d), which has remained unamended since it was originally enacted in 1975, was meant to be replaced by HRS § 571–52.5, which was enacted as a part of Act 332 of 1986. However, "[a]s a general rule, repeals by implication are disfa-

vored. If effect can reasonably be given to two statutes, it is proper to presume that the earlier statute is to remain in force and that the later statute did not repeal it." *Gardens at West Maui,* 90 Hawai'i at 340, 978 P.2d at 778 (citations, internal quotation marks and original brackets omitted). In the case of HRS § 584–15(d) and HRS § 571–52.5, effect can be given both statutes. HRS § 571–52.5 establishes the amount of child support payments to be made now, and as modified in the future, by the obligor parent; HRS § 584–15(d) gives the court the discretion to limit the obligor parent's liability for past support to a just proportion of past expenses. HRS § 584–15(d) was not repealed when HRS § 571–52.5 was enacted.

Moreover, the chapter of which HRS § 571–52.5 is a part, HRS chapter 571 (1993 & Supp.2000) (entitled, "Family Courts"), governs the family courts in general. The chapter containing HRS § 584–15(d), on the other hand, HRS chapter 584 (entitled, "Uniform Parentage Act"), is concerned specifically and exclusively with actions to establish the paternity of a child and to obtain child support, reimbursement and other relief, and is the authority that Mother invoked in bringing her petition for paternity. Hence, as between HRS § 571–52.5 and HRS § 584–15(d), and assuming *arguendo* that they embrace the same subject matter, it cannot be said as a matter of statutory construction that the former ousts the latter in the matter of past child support. *Cf. State v. Putnam,* 93 Hawai'i 362, 370, 3 P.3d 1239, 1247 (2000) ("Where there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored." (Brackets, citations, footnote and internal quotations marks omitted.)).

At any rate, we need no interpretation to clearly see that the last sentence of HRS § 584–15(d) affords the court discretion to limit past child support to a proportion of the expenses already incurred on behalf of the child, as an alternative to any other provisions of HRS § 584–15 that may govern past child support.[12] As stated by the supreme

---

12. HRS § 584–15(c), (d) & (e) provide, in pertinent part:

 **Judgment or order....**

 ....

(c) The judgment or order [regarding paternity] may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody and guardianship of the child, visitation

court:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. Where the language of a statute is plain and unambiguous, our only duty is to give effect to the statute's plain and obvious meaning. Further, in interpreting a statute, we give the words their common meaning, unless there is something in the statute requiring a different interpretation.

*Gardens at West Maui*, 90 Hawai'i at 339, 978 P.2d at 777 (citation omitted).

 Having decided the applicability of HRS § 584-15(d), we now examine how it was applied in this case. The court's application of HRS § 584-15(d) is reviewed for abuse of discretion. *Cf. Nabarrete*, 86 Hawai'i at 372, 949 P.2d at 212 ("Since no rules or guidelines have been published advising the family court how to decide [a certain child support issue], the relevant appellate standard of review is the abuse of discretion standard."). An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citation omitted).

In this regard, Mother argues that, because of Child's academic success and admirable character, his "reasonable needs ... based on the relevant standard of living[,]" *Nabarrete*, 86 Hawai'i at 371, 949 P.2d at 211 (emphasis omitted), are greater than they otherwise would be. This argument is illogical and irrelevant to the past expenses of the Child under HRS § 584-15(d), and is without merit. Mother also argues that the evidence presented at trial about the high standard of living she enjoyed during her childhood demonstrates that she knows how to spend a large amount of money in Child's best interest. Be that as it may, it says nothing about past expenditures on behalf of Child. This argument is also without merit.

Mother also argues there was uncontradicted testimony that she had sold her house in Honolulu for $100,000, and had spent all but $10,000 of that allegedly sole source of income on her and Child's expenses during their time in California. She thereupon contends the court should have found that she had spent an additional $90,000, for a total of $272,000 ($90,000 plus the $182,000 found by the court), on their combined expenses during Child's lifetime.[13] She concludes the court should have found a total of $136,000 in reimbursable expenses (50% of $272,000), instead of $90,000 in reimbursable expenses.

However, CSEA and Mother bore the burden of proof as petitioners. *See Ho v. Leftwich*, 88 Hawai'i 251, 257, 965 P.2d 793, 799 (1998) (the plaintiff "must bear the burden of proving all of the elements of her case" (citation omitted)). Other than the uncontradicted testimony cited, there was virtually no other evidence presented to the court at trial about Mother's and Child's expenses during their time in California. We agree with the court's conclusion that the syllogism advanced by Mother is devoid of factual underpinning sufficient to meet her burden of proof.

---

privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child.... The court may further order the noncustodial parent to reimburse the custodial parent, the child, or any public agency for reasonable expenses incurred prior to entry of judgment, including support, maintenance, education, and funeral expenses expended for the benefit of the child.

(d) Support judgment or orders ordinarily shall be for periodic payments which may vary in amount. In the best interest of the child, a lump sum payment or the purchase of an annuity may be ordered in lieu of periodic payments of support. The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just.

(e) In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall use the guidelines established under section 576D-7. Provision may be made for the support, maintenance, and education of an adult or minor child and an incompetent adult child, whether or not the petition is made before or after the child has attained the age of majority.

13. Mother does not raise on appeal the issue of expenditures for the period of time between Child's birth and their move to California.

In addition, "it is the right of the trier of fact to determine credibility and to weigh evidence." *State v. Napulou*, 85 Hawai'i 49, 55, 936 P.2d 1297, 1303 (App.1997) (citation omitted). We observe that, in a similar respect, the court was "not convinced [Mother] spent no monies on herself between 1990 and the present for personal expenses, other than food." Because the court had the exclusive right to decide how much weight, if any, to give to Mother's testimony about her expenses in California, we will not reexamine its finding on the issue.

Mother's final complaint on the issue of past child support is that the court, after finding that she had spent a total of $91,000 on Child's expenses, ordered Father to reimburse only $61,000, or approximately 67%, of that sum. HRS § 584–15(d) gave the court discretion to limit Father's liability to the portion of Child's expenses that it deemed just. Although reasonable minds might differ as to the justice of the court's apportionment, we cannot say, upon the circumstances of the case as revealed by the evidence, that the court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice" in this respect. *Amfac, Inc.*, 74 Haw. at 114, 839 P.2d at 26 (citation omitted).

We conclude the court did not err in its award for reimbursement of past expenses for Child under HRS § 584–15(d).

*B. Current Child Support.*

■ Before the establishment of child support guidelines, appellate review of a child support award proceeded under the abuse of discretion standard. *Doe VI v. Roe VI*, 6 Haw.App. 629, 640, 736 P.2d 448, 456 (1987) (a paternity proceeding under HRS chapter 584 (1985)). However, the advent of child support guidelines significantly narrowed the trial court's discretion in certain respects:

When we decided *Davis [v. Davis*, 3 Haw. App. 501, 653 P.2d 1167 (1982) ], the family court's discretion was "wide". That discretion was substantially narrowed, however, when the Board of Family Court Judges promulgated its *Guidelines* on October 20, 1986.

In our view, the family court's decision not to apply the October 20, 1986 *Guidelines* was wrong. Even when the *Guide-lines* are applied, however, HRS § 571–52.5 (Supp.1986) permits the family court to depart from the *Guidelines* "when exceptional circumstances warrant departure." The questions are (a) whether there are exceptional circumstances in this case permitting a departure from the *Guidelines* so as to allow Father to pay less than the *Guidelines* indicate; (b) if yes, whether Father should be allowed to pay less than the *Guidelines* indicate; and (c) if yes, how much less? We review the family court's answer to question (a) under the right/wrong or de novo standard of appellate review. We review the family court's answer to questions (b) and (c) under the narrowed abuse of allowed discretion standard.

*Mack v. Mack*, 7 Haw.App. 171, 179–80, 749 P.2d 478, 483 (1988) (footnote omitted).

As previously noted, HRS § 571–52.5, applicable to the family courts in general, requires use of the ACSG established under HRS § 576D–7 (1993 & Supp.2000) when "the court establishes or modifies the amount of child support required to be paid by a parent[.]" The chapter governing paternity proceedings does the same: "In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall use the guidelines established under section 576D–7." HRS § 584–15(e).

■ As also noted above, HRS § 571–52.5 and the ACSG require "exceptional circumstances" before a court may depart from the amount calculated by the ACSG. "The party seeking [an] exceptional circumstance deviation from the amount computed according to the [ACSG] has the burden of proof." *Richardson v. Richardson*, 8 Haw.App. 446, 457, 808 P.2d 1279, 1286–87 (1991). The ACSG, as we interpret them, include among such exceptional circumstances "[a] monthly income that would result in a computation higher than the reasonable needs of the children based on the relevant standard of living." *Nabarrete*, 86 Hawai'i at 371, 949 P.2d at 211 (emphasis omitted).

In *Doe VI*, a paternity action tried before the advent of child support guidelines, we penned the general principle:

> We do not agree with [father] that the need of the child is controlling. Nor do we believe, however, that the child's support should be determined mainly on the non-custodial father's standard of living. The court must be cognizant of the fact that to raise the mother's standard of living through the vehicle of child support would constitute the imposition of an unauthorized obligation on part of the father toward the mother. Also, an award for child support is for the child's current needs based on the child's appropriate standard of living and not for the purpose of saving portions thereof for future needs.

*Doe VI*, 6 Haw.App. at 641, 736 P.2d at 456–57 (citations and original brackets omitted). In *Richardson*, a post-guidelines case in which the mother moved for an increase in child support from her former husband, we recognized that the ACSG incorporated this general principle:

> In *Doe VI v. Roe VI*, 6 Haw.App. 629, 736 P.2d 448 (1987), which is a pre-child support guidelines case, we stated that "an award for child support is for the child's current needs based on the child's appropriate standard of living and not for the purpose of saving portions thereof for future needs." 6 Haw.App. at 641, 736 P.2d at 457. In other words, a payment in excess of the children's reasonable needs at the appropriate standard of living is, by definition, a payment for something other than child support. In recognition of this fact, Part III of the ACSG states [that an exceptional circumstance is] ... "[a]n unusually high monthly income that would result in a computation higher than the reasonable needs of the children. *Doe VI v. Roe VI* [.]"

*Richardson*, 8 Haw.App. at 456–57, 808 P.2d at 1286 (some quotation marks in lieu of internal block quote format). Also in *Richardson*, we formulated a schema for analysis in this regard:

> In this situation the three questions of fact that must be answered are: (1) What is the appropriate standard of living? (2) What is the total cost of the children's reasonable needs at the appropriate standard of living? (3) If the answer to question (2) is less than the total amount computed according to Parts I and II of the ACSG, then the case involves an exceptional circumstance.
>
> What criteria shall the family court use when factually deciding the child's appropriate standard of living in a particular case? In our view, the following subsections of HRS § 576D–7 (Supp.1990) are the most relevant:
>
> [ (a) ](1) All earnings, income, and resources of both parents; ...
>
> (2) The earning potential, reasonable necessities, and borrowing capacity of both parents;
>
> \* \* \*
>
> (7) To balance the standard of living of both parents and child ...;
>
> (8) To avoid extreme and inequitable changes in either parent's income depending on custody; ...
>
> \* \* \*
>
> [ (b) ](3) Applied to ensure, at a minimum, that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent[.]
>
> Based on the above, we conclude that (a) the parents' prior financial situation; (b) the custodial parent's current financial situation; and (c) the noncustodial parent's current financial situation are all relevant considerations when factually determining the child's appropriate standard of living in a particular case.

*Id.* at 457–58, 808 P.2d at 1287 (ellipses and typesetting in the original).

In our case, where the parents never married and never formed a household 'a la *Richardson*, there was no "parents' prior financial situation" because the parents never formed a financial unit. Therefore, only "the custodial parent's current financial situation" and "the noncustodial parent's current financial situation" were relevant considerations in determining Child's "appropriate standard of living."

Mother argues on appeal that the court abused its discretion by relying too much on

the respective current expenses of the parties in its determination of current child support, while ignoring their respective current incomes and assets. Mother bootstraps this argument into the conclusion that,

> The trial court is of the unique thought that in a paternity support case, the [ACSG] do not apply. It is assumed, according to the trial court, that only children born in wedlock may utilize the [ACSG]. The trial court offers no authority or precedent for the exclusion. Nevertheless, the trial court went ahead and determined current child support by percentages of each parents [sic] monthly expenses[.]
>
> . . . .
>
> It is submitted that there should be no distinction in the application of the [ACSG] whether a child is born in or out of wedlock. By creating such a distinction in order to avoid application of the [ACSG] in determining child support payment amounts for illegitimate children has no precedent, no apparent public policy, and is prejudicial without basis. The trial court's second class treatment of illegitimate children compounds its error by eliminating any need to assess whether the child, where fortunate to have been conceived from parents of financial stature, has the ability to fulfill the high expectations his/her parents are capable of financially providing.

Opening Brief at 16–17. While passionately stated, there are a number of problems with this argument.

First, the underlying argument, that the court ignored the respective current incomes and assets of the parties, is simply not true. The court took them very much into consideration when it ordered Father to pay for 92% of Child's reasonable needs at the appropriate standard of living. They naturally played a role as well in producing the respective levels of current expenses that were utilized by the court in arriving at the appropriate standard of living. Second, the court made no distinction between so-called legitimate and illegitimate children "in order to avoid application of the [ACSG.]" The court, in its words, utilized "the criteria described in *Richardson*," a case involving children born in wedlock. Thus, its analytical frame-

work would have been the same regardless of the marital status of Child's parents. Finally, the notion that Child's aptitudes should be a consideration in this respect cannot withstand careful scrutiny of the apposite statutes and cases.

Apparently, Mother's argument is actuated by the following passage in the court's decision and order, which she quotes as proof of her argument:

> The concept of an appropriate standard of living remains elusive, especially in a paternity case where some of the criteria described in *Richardson, supra,* pages 457 and 458[, 808 P.2d 1279], do not seem to apply. For example: "(7) To balance the standard of living of both parents and child;" and "(8) To avoid extreme and unrequitable [ (sic; should be "inequitable") ] changes in either parent's income depending upon custody." [Father] has no obligation to [Mother], and to raise [Mother's] standard of living through the vehicle of child support would be improper (*Doe [VI] v. Roe VI,* 6 [Haw.App.] 629, 641[, 736 P.2d 448]). This would seem especially true where the parties have never cohabited and there is no history of a complete family unit standard of living.

Mother mistakes the point of the above passage. It is not that the court believed the ACSG do not apply in paternity cases. Rather, the court believed that the two HRS § 576D-7 criteria it identified, stated as they were in a case involving children born in wedlock, were not useful in determining the appropriate standard of living in a case in which the parents never married or cohabited.

The court based its determination of the reasonable needs of Child at the appropriate standard of living on the relatively basic general expenses of Mother, and on the relatively more opulent personal expenses of Father. Intertwined as they naturally were with the respective incomes and assets of the parties, they were indicative of Mother's financial situation and Father's financial situation, the two relevant considerations we identified above. The court ruled that the reasonable needs of the Child at the appropriate standard of living required that approximately

$1550 per month be spent on Child's expenses, of which $1,430, or approximately 92%, was Father's share. This is much less than the amount that any of the ACSG worksheets dictated Father should pay in current child support. Hence, the court concluded that Father indeed had a monthly income that would result in a computation higher than the reasonable needs of the child based on the relevant standard of living. In considering a departure from the ACSG on this basis, the court was correct. *Mack,* 7 Haw. App. at 179, 749 P.2d at 483; *Nabarrete,* 86 Hawai'i at 371, 949 P.2d at 211.

We next examine whether the court abused its discretion in deciding that Father should pay less than the ACSG indicated, and in deciding how much less. *Mack,* 7 Haw.App. at 179, 749 P.2d at 483.

*Doe VI* was a pre-guidelines paternity action involving a mother whose annual salary was $34,000. She owned a two-bedroom condominium apartment subject to a mortgage of $48,000. She also owned a 1978 BMW and about $54,500 in her employer's profit-sharing plan. The father's gross annual income over the relevant period averaged about $110,000. He admitted to a $2,300,000 net worth. *Doe VI,* 6 Haw.App. at 637–38, 736 P.2d at 454–55.

In vacating the trial court's child support order that required the father to pay $1,600 per month in basic child support, we first determined "the child's current needs based on the child's appropriate standard of living[.]" *Id.* at 641, 736 P.2d at 457. Relying upon the mother's current income and expense statement, we determined that the child's monthly personal expenses totaled $500. We added to that the child's monthly general expenses, $434, to arrive at a monthly expense total of $934. Then, we accepted mother's representation that father's contribution of child support would boost the child's monthly expenses by $250, arriving at a rounded $1,200 in monthly expenses at the child's appropriate standard of living. Applying an 80% factor based upon the respective earning abilities and financial means of the parties, we held that father should pay $960 per month in basic child support. *Id.* at 640–42, 736 P.2d at 456–57.

In our case, the court utilized the same procedure, *mutatis mutandis,* except that it treated Father's actual monthly personal expenses as Child's monthly personal expenses at the appropriate standard or living, in the absence of any evidence of estimate of how child support would boost Child's actual monthly expenses.

In *Richardson,* a post-divorce action under the ACSG, the divorce decree had ordered the father to pay $550 per month in basic child support for two children, based on the mother's then-current monthly income of $300 and the father's then-current monthly income of $2,530. Almost three years later, the mother moved for an increase in child support. Her average gross monthly income at the time was approximately $1,585. Father's average gross monthly income at the time was approximately $10,788. The applicable ACSG dictated that the father pay $2,100 per month in basic child support. However, the trial court departed from the ACSG, because the father had "an unusually high monthly income that would result in a computation higher than the reasonable needs of the child pursuant to Section 576D– 7, HRS, and *Doe VI v. Roe VI,* 6 Haw.App. 629, 736 P.2d 448 (1987)[,]" and ordered the father to pay $860 per month in basic child support. *Richardson,* 8 Haw.App. at 448–54, 808 P.2d at 1281–84 (internal block quote format omitted).

In vacating the award of basic child support, we observed that the monthly general expenses of the mother and her children totaled $1,483. The monthly personal expenses of the children amounted to $811. Thereupon, we held:

Based on the facts in the record, it appears that [father's] court-ordered payments are in fact less than the amount computed according to ... the November 1, 1989 ACSG. In light of the fact that [mother] was awarded only $49.00 per month more than the $811.00 per month she was actually spending for the children's [personal] expenses, we conclude that the amount awarded does not fund the children's share [ ($741.50) ] of [mother's general] monthly expenses for housing, car, and utilities [ ($1,483) ]. In light of the record, especial-

ly [finding of fact] 10 [ (essentially, that the children were well cared for) ] and the fact that [mother] was awarded only $49.00 per month more than the $811.00 per month she was actually spending for the children's [personal] expenses when she was receiving only $550.00 per month child support based on [father's] $2,530 monthly income, we also conclude that the family court either did not consider or did not adequately consider [father's] current $10,788.00 per month income when it decided [mother's] motion. Therefore, we conclude that the family court failed to comply with HRS § 584–15(e) and the ACSG.

*Id.* at 458–59, 808 P.2d at 1287.

In our case, Child's actual monthly personal expenses totaled $557. His share of the household's monthly general expenses was $545.91. Hence, the court's basic child support award of $1,430 per month was not only $873 more than Child's actual monthly personal expenses, it was about $327 more than all of his actual monthly expenses put together.

Although reasonable minds might differ as to the justice of the amount of basic child support awarded by the court, in light of the foregoing precedents, we cannot say, upon the circumstances of the case as revealed by the evidence, that the court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice" in this respect. *Amfac, Inc.*, 74 Haw. at 114, 839 P.2d at 26 (citation omitted).

We conclude the court did not err in its award of current child support.

## IV. CONCLUSION.

Accordingly, we affirm the court's March 9, 1999 decision and order, its December 20, 1999 order denying Mother's March 19, 1999 motion for reconsideration of its decision and

14. Mother's March 19, 1999 motion for reconsideration of the court's March 9, 1999 decision and order argued that the court erred in not awarding her reimbursement of her expenditures on behalf of Child during their stay in California. Because we have concluded otherwise, *supra*, we

order,[14] and its May 3, 1999 judgment and the notice of entry of judgment of even date.

affirm the court's December 20, 1999 order denying Mother's motion. We observe, in passing, that Mother's motion attached and relied upon a portion of her deposition, which was not in evidence at trial.