CASH *v.* CASH.

5-2592

353 S. W. 2d 348

Opinion delivered February 5, 1962.

*Terral & Rawlings* and *Gail O. Matthews,* for appellant.

*Wayne Foster,* for appellee.

SAM ROBINSON, Associate Justice. This appeal presents a question which precedent has left unanswered in this, as well as every other jurisdiction: Do Social Security payments from the account of a father to his dependent son displace court ordered support payments?

The appellant, Henry J. Cash, and the appellee, Ethel Cash were formerly husband and wife, living together as such for some eighteen years, their marriage ending in a divorce in May of 1959. Two children were born to them, a daughter who is now married, and a son, twelve years of age at the commencement of the present litigation. The divorce decree awarded custody of the minor son to his mother along with support payments from the father of $32.50 per week.

Ethel Cash remarried in June of 1959, and in September Henry Cash petitioned for a modification of the decree to reduce his support payments. The Court reduced his payments to $15.00 per week. In February, 1960 Mrs. Cash's second marriage was terminated by the death of her husband.

In January of 1961, Mr. Cash having reached the age of 65, retired and applied for Social Security benefits for himself and his son. The following month the son began to receive Social Security benefits at the rate of $60.00 a month. Mr. Cash, thinking that the Social Security benefits which he had caused the son to receive relieved him of his court ordered payment, stopped the $15.00 weekly payments to the son. Shortly after the support payments were halted, Mrs. Cash filed a motion stating that Mr. Cash had an increase in income and requesting an increase in his weekly payments. Mr. Cash filed a counter-petition alleging that he had retired, that both he and his son were drawing Social Security benefits, and requesting that he be relieved from paying the $15.00 payments.

Upon a hearing of the case, the Chancellor refused to allow the Social Security payments to the son to displace the support payments, but did reduce the payments to $10.00 per week. The appellant now brings the matter to this Court claiming that such refusal by the Chancellor constituted reversible error.

Mr. Cash, before his retirement, was a long-time employee of the Porocel Company where he worked as a night watchman earning in excess of $5,000 a year. Also he had some income from rental houses which he owned. This was his financial condition at the time of the original divorce decree which ordered him to pay $32.50 per week to his former wife for the support of their son. Upon the remarriage of Mrs. Cash, the Court reduced these payments to $15.00 per week.

At the time of the hearing on the motion now under consideration, the appellant testified that his monthly income was as follows: Social Security $120.00, payments from the John Hancock Insurance Company $26.70, rent from four houses in which he had a life estate $145.00, and $20.42 from the Phillips Corporation. This is a total monthly income of $312.12. However, Mr. Cash also testified that he makes monthly payments on his debts which total $205.03, and that he also pays

weekly room and board to a daughter with whom he is living in the amount of $8.00 per week. His monthly payments are toward the retirement of debts which he incurred in buying clothes for himself, his former wife and his son, for upkeep on his rent houses, money which he borrowed to pay his taxes, a mortgage on the house which he gave to his wife for life, and a note to the bank representing the financing of a truck.

If Mr. Cash were not allowed credit for the Social Security payments to his son and were forced to make the support payments ordered in the court below, his total monthly outlay including payments on his debts and room and board, taken along with the support payments ($40.00 per month) would total $277.03 which when subtracted from his monthly income would leave him $35.09 a month, hardly a handsome sum for a man over 65 years of age who has worked all his life with dreams of retirement in his old age. If Mr. Cash were not given credit for the amount of the Social Security payment which his son is receiving, then it is probable that he would be forced to seek employment in order to keep his head above water in meeting his obligations as they fall due. If this is the case, then how could he ever retire?

We are impressed at the apparent lack of bitterness and showing of good faith on the part of Mr. Cash in this entire matter, starting with the date of his divorce and continuing down to the time of the present litigation.

Mrs. Cash divorced her husband, the appellant, who was twenty years her senior, and the following month married a younger man who had himself been divorced only two days. The decree granting the appellee a divorce from the appellant made no provision for the support of the appellee, nor did it give her any of the real estate which the appellant owned at the time of the divorce decree, although apparently all of the real estate had been purchased during their marriage. Yet the appellant deeded all of his rental property to the two

children of their marriage (appellant had two children by a former marriage), reserving for himself a life estate in all of the realty except one house and lot in which he reserved a life estate for his former wife, the appellee. Speaking of the $32.50 per week child support clause contained in his wife's divorce decree, he said that he understood that the money was for the support of his former wife as well as his son. It is not surprising that he suffered under this misconception, because under the circumstances at the time, $32.50 seemed to be quite a liberal amount for the support of a ten year old boy.

Mrs. Cash testified that the support payment even when reduced from $32.50 to $15.00 per week was sufficient as long as her second husband was alive, but that on his death her household lost the benefit of his $160.00 monthly earnings. It is indeed unfortunate that her second husband died apparently leaving her with insufficient funds to maintain herself, but this in no way places the burden of her support on Mr. Cash. According to the appellee's own testimony the appellant deeded to her a life estate in a house, thus providing her and his son with a place to live, that he pays all of the taxes and insurance on the house as well as the monthly water bill.

All of the foregoing discloses that Mr. Cash was, from the time of his divorce down to the institution by the appellant of the present litigation, earnestly attempting to meet what he apparently considered at least a moral obligation to his son and his ex-wife.

Neither the research of counsel, nor of the Court has revealed a case such as this one involving Social Security payments to a dependent child; however, the case of *Hinton* v. *Hinton,* 211 Ark. 159, 199 S. W. 2d 591, is a case having an analogous fact situation. There, the father, who was under a court order to make payments to his dependent child, was inducted into the army during World War II. While in the service he made out an allotment of $42.00 per month for the benefit of his minor child, $22.00 of this amount being deducted from

the salary of the soldier, the remainder being paid by the United States Government. This Court held that while not all of the money paid for the benefit of the child was deducted from his earning, they were paid nevertheless, and that he was entitled to credit for them.

Of course the father in the *Hinton* case had little choice about entering the armed forces in the time of a national emergency, and therefore his civilian earning power was reduced to nothing, making it impossible for him to satisfy the support decree except from his military wages along with the amount contributed by the Federal Government.

In the case at bar the appellant had little choice but to retire from his occupation and apply for his Social Security payment for himself and his son; his retirement was mandatory due to the policy of his company.

It may also be pointed out that the Social Security payments made by the Federal Government to the dependent son were earned in part by the appellant himself and are not altogether a gift from the Federal Government.

Under the circumstances of this case the appellant should be credited with the full amount of the Social Security payments, and he should not be obliged to pay any additional amount.

Reversed.