134 P.3d 625

**Kathryn Eggen CLARK, Plaintiff–Appellant,**

v.

**Francis Eugene CLARK, Defendant–Appellee.**

**No. 26209.**

Intermediate Court of Appeals of Hawai'i.

April 19, 2006.

Certiorari Denied May 30, 2006.

Ronald D.S. Lau, Honolulu, on the briefs, for Plaintiff–Appellant.

Theodore Y.H. Chinn, on the briefs, for Defendant–Appellee.

WATANABE, Acting C.J., LIM and NAKAMURA, JJ.

Opinion of the Court by LIM, J.

Kathryn Eggen Clark (Mother) appeals the October 7, 2003 order of the Family Court of the First Circuit (family court) [1] that granted the July 25, 2003 motion for post-decree relief filed by her ex-husband, Francis Eugene Clark (Father). Mother also appeals the October 14, 2003 order that denied her September 5, 2003 motion for reconsideration of Father's post-decree relief.

We are called upon to confront an issue of first impression in Hawai'i—whether social security benefits paid concomitantly to Father's children may be credited against his child support arrearages. On the facts of this case, we hold that they may not, and that the family court's conclusion to the contrary was incorrect. We therefore vacate the orders below and remand for proceedings consistent with this opinion.

## I. Background.

Mother and Father divorced on May 15, 1991. The decree awarded Mother sole legal and primary physical custody of their two daughters, an infant and a four-year-old. Father was ordered to pay child support in the total amount of $1,100.00 per month. The decree also made provision for payment of child support arrearages, in the amount of $9,000.00 as of the date of the decree.

Following the divorce, child support arrearages persisted. On July 29, 1993, Mother alleged that Father was in arrears in the amount of $1,635.00. On September 23, 1993, Mother claimed that Father was behind about $6,100.00 in child support. On October 1, 1993, the family court entered a judgment against Father, in the amount of $9,751.00,

1. The Honorable R. Mark Browning presided.

"for past-due child support, medical costs and equalization payments[.]"

In the meantime, Father was imprisoned from September 6, 1993 to May 24, 2001, for stabbing his wife, Diana May Clark, in the chest after spending the night drinking alcohol and mainlining cocaine. *See State v. Clark*, 83 Hawai'i 289, 926 P.2d 194 (1996). Father made no child support payments during his years of incarceration. According to the Child Support Enforcement Agency (CSEA), Father was $111,099.00 in arrears on October 10, 2001.

About six months after his release from prison, Father filed a motion to reduce his child support to $100.00 per month ($50.00 per child). As for the prerequisite material change in circumstances, Father cited his incarceration, as well as the fact that "[Father] ... is now on Hawaii state disability due to health problems and has no income." Father's financials showed monthly income of $590.00 from the State of Hawai'i. In the continuation sheet to his motion, Father wrote that "[c]hild support payments should have been reduced at the hearing in 1993 as [Father] was incarcerated and had no means of income."

On December 21, 2001, the family court partially granted Father's motion. Father's support obligation was cut to $50 per child per month effective November 2001. However, the family court continued the matter as to child support arrearages and ordered Father to notify CSEA of the continued hearing. On December 31, 2001, Mother filed a motion to reconsider the reduction in child support. On October 31, 2002, the family court issued an order reaffirming that, "[e]ffective 11/01, [Father] shall pay child support of $50 per child." The order also stated that, "[a]s to reduction of arrearages owed for child support, [Father] shall make all efforts to resolve the arrearages with CSEA."

Meanwhile, Father became eligible for social security retirement benefits on his sixty-second birthday, December 12, 2001. Concomitantly, his daughters received social se-

curity benefits of $507.00 each, for a total of $1,014.00 per month, from January 2002 to November 2002. In December 2002, the girls started receiving increased benefits of $514.00 each, for a total of $1,028.00 per month.

On February 7, 2003, Father moved to reduce the child support arrearages that had accrued during his incarceration. Father complained that, despite his incarceration, "CSEA continued to bill [Father] for $1100.00 a month in child support. Total: $110934.00[.] [Father] would request that arreages [sic] be readjusted to $50.00 per child per month for the period of 9/6/93 to 5/25/01[.]" The family court denied Father's motion at a hearing held on March 12, 2003.[2]

On July 25, 2003, Father filed the motion for post-decree relief that is the subject of this appeal. This time, Father sought to establish the exact amount of his child support arrearages, stating that "CSEA will not honor payment on the arrearages without an amount in the form of a court order." In addition, Father averred:

> On Dec. 21, 2001 it was discussed in family court that I go from social security disability to early retirement for the benefit of the children.
>
> My child support was reduced to $50.00 per child per month at that time. [Father] now pays thru social security $100.00 per month for current child support and $928.00 per month towards the arrearages. . . .
>
> CSEA attorney, Diana Tarra [sic], agreed at that time and recommend [sic] CSEA be dropped from the loop.

On August 27, 2003, Mother filed a *pro se* response. Mother noted:

> Upon [Father's] 62nd birthday, 12/12/01, he was required to file for early Social Security retirement benefits because he was a State financial assistance recipient. [Hawaii Administrative Rules (HAR)] § 17–647–5(b),(2). [Father] would have compromised his financial assistance eligibility, had he not taken an early retirement

---

2. Francis Eugene Clark (Father) did not appeal the March 12, 2003 order of the Family Court of the First Circuit that denied his February 7, 2003 motion to reduce the child support arrearages that had accrued during his incarceration.

on his 62nd birthday, per [HAR] § 17–647–5(b),(3),(c).

In addition, Mother asserted:

Child support cannot be credited with Social Security Children's benefits nor can child support arrearage be discharged through Social Security Children's benefits. To do so would, in essence, be like having the children pay for their own child support and satisfy the arrearage their father created by non-payment.

Mother attached to her response a copy of an administrative order from the Office of Child Support Hearings, which established Father's total child support arrearages at "$110,934.00 for the period 3/1/1990 through 6/30/2003."

At the hearing on the July 25, 2003 motion, held on August 27, 2003, Father's counsel made the following offer of proof:

The offer of proof would basically be approximately ninety thousand of this hundred and ten thousand, at least ninety thousand was accrued during the seven years [Father] was incarcerated, and requested three times that the child support enforcement agency modify that amount. For whatever reason, they did not from twelve, or eleven hundred to one hundred.

But nevertheless, he has been arranged to have this social security/disability money be sent to the children directly, or I guess to the mother on behalf of the children....

So, this, what [Father] is basically requesting is that he be credited for the amounts of the funds already received and continue to be credited for the overage. If the child-support amount has been calculated at one hundred per month or fifty dollars per child and he's paying one thousand twenty-eight dollars and some change, that he get nine hundred and twenty-eight dollars of approximately credit per month which will bring him current according to this, we think ridiculous amount, in nine, about eleven years.

CSEA took no position on Father's motion. Appearing by telephone from her residence on the Mainland, Mother argued in opposition:

.... Though father claims the arrearage are being paid by social security, the arrearage has not been paid by social security. He receives social security retirement benefits. As a retired person, his children are eligible for children's benefits under social security. That's a separate program.

And yes, it is true that they receive five hundred and fourteen dollars each. Father's income is in no way affected by his children's social security awards. And father has stated that he took an early retirement so the children could benefit and receive the benefits of this, but in fact, he was required to file for social security retirement because of welfare eligibility requirements that would, that forced him to do so, otherwise he would have been fraudulently claiming welfare benefits when, in fact, he was able to receive social security retirement income.

So, it's just, simply as a consequent [sic] of, consequent [sic] to this filing for retirement that his children are eligible for social security benefits. And it would be inappropriate for him to receive credit for benefits payable to them when in fact these benefits would be payable to them in addition to any child support and garnishment for arrearage from his retirement income.

....

The children's benefits are considered auxiliary payments, and the social security benefit payments, the retirement benefits can be garnished for child-support purposes provided they receive an order to do so. That would be coming out of the father's actual income from social security.

....

So, in essence, I mean, it's just not, [Father] is not paying child support. He hasn't paid child support since 12, let's see, since, the last payment I received was on 2–6–02, and since that time, you know, there's been no child support payments and we've been going around about, you know, direct payments to me for the past six months since the court heard on, I think it was March, the court already decided that the motion was denied for re-

duced amount based on the fact that he was incarcerated for ten years.

At the end of the hearing, the family court orally ruled as follows:

THE COURT: Okay, thank you, [Mother] and [Father], [Father's counsel]. The Court at this time will issue the following decision. The Court has already decided that its [sic] not going to lower the child support. That's not the issue. The issue here is whether or not [Father] should be credited in terms of the arrearages that exist now through the balance of the social security money that's being paid to the children and [Mother].

[MOTHER]: There's nothing paid to me though.

THE COURT: I understand—

[MOTHER]: (indiscernible)

THE COURT: As the responsible parent, yes. And the law on this issue is quite specific, and specifically there's a case in Hawaii, *Child Support Enforcement Agency v. John Doe,* 92 [Hawai'i] 276[, 990 P.2d 1158 (App.1999)]. It's a 1999 case. And based upon that and other case law and based upon the guidelines that we've been, that all been approved or the process been approved by child support guidelines and the process been approved by the family court at this point, there's no question that he gets credit. So, I'm going to grant the motion with respect to that portion (indis-

cernible). Okay, thank you very much to all of you. [Father's counsel], you will prepare the order.

[FATHER'S COUNSEL]: Yeah, just one question, your Honor. Could we have exhibits A and B in evidence.[3] They're the calculations. Thank you.

THE COURT: Thank you, [Mother], I'm going to say goodby [sic] now. Alright.

[FATHER'S COUNSEL]: Thank you.

(Footnote supplied.) Mother filed a motion for reconsideration on September 5, 2003, which the family court denied on October 14, 2003, without a hearing.

On October 7, 2003, the family court filed its order granting Father's July 25, 2003 motion for post-decree relief, as follows:

[Father] shall be credited for the child support arrearages that was paid by social security from January 2002 through September 2003 in the amount of $19,534.00.... [Father's] child support obligation of $100.00 per month shall continue to be paid by social security. For so long as social security is paid for the children, [Father] shall be credited $464.00 per child per month or the total sum of $928.00 per month towards his child support arrears.

[Father's] credit is based on the following paid by social security:

| | | | |
|---|---|---|---|
| January 2002 - February 2002 | $1,014.00 × 2 = | $ 2,028.00 |
| March 2002 - November 2002 | 914.00 × 9 = | $ 8,226.00 |
| December 2002 - September 2003 | 928.00 × 10 = | $ 9,280.00 |
| TOTAL | | $19,534.00 |

Mother filed her notice of this appeal on November 7, 2003, specifically referencing the October 7, 2003 order for post-decree relief and the October 14, 2003 order denying her motion for reconsideration. Following Mother's notice of appeal, the family court entered its findings of fact and conclusions of law, which read, in pertinent part, as follows:

The Court, having considered the evidence admitted at hearing, the testimony of the witnesses, the memoranda submit-

ted by counsel and all of the records and files herein, and pursuant to Rule 52 of the Hawaii Family Court Rules, enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. At all relevant times herein, Mother and Father were residents of the State of Hawaii.

---

**3.** Exhibits A and B were attached to the July 25, 2003 motion for post-decree relief filed by Father. They were Social Security Administration letters to Father showing the social security benefits paid and payable to the two daughters of the parties on Father's account.

2. Mother and Father were divorced on May 15, 1991 in the State of Hawaii and an order for child support was entered at that time.

3. There were two children born during the marriage. . . .

4. Father became disabled in 2001 and his only income is social security.

5. Father was incarcerated for seven (7) years from September 6, 1993 to May 24, 2001.

6. During the seven years of Father's incarceration, Father did not pay child support.

7. While Father was incarcerated, Father requested his child support be modified to the Child Support Enforcement Agency, at least three (3) times with no action on his requests.

8. Father's child support was not modified, and as a result, Father's child support arrearage accrued to approximately $90,000.00.

9. Mother did not dispute that Father was incarcerated.

10. Father's child support, while he was incarcerated should have been $50.00 per child per month for a total of $100.00 per month.

11. It is undisputed that Father is currently disabled, that his only source of income is his social security and that his current child support is $50.00 per child per month for a total of $100.00 per month effective as of November 2001 pursuant to the order filed October 31, 2002.

12. From January 2002 through November 2002, social security paid $507.00 per month per child for a total of $1,014.00 per month.

13. From December 2002, the two children have been receiving a monthly amount of $514.00 each directly from Father's social security benefits for a total of $1,028.00 per month.

14. The children have received approximately $24,518.00 directly from social security benefits since January 2002.

15. The children have been and are currently receiving $928.00 per month more than their calculated child support amount of $100.00 total monthly child support. This amount shall be deducted from the amount of past child support owing to Mother by Father.

16. There should be an adjustment of the past child support owing to Mother in the amount of $19,534.00.

### CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court enters the following Conclusions of Law:

1. The Court has jurisdiction over the parties and the subject matter herein.

2. Child Support must be calculated pursuant to the existing child support guidelines, which are the 1998 Amended Child Support Guidelines (hereinafter "CSGW") instructions. Father's income for child support purposes includes the money he receives from social security income.

3. Social Security Disability payments for the child's benefit must be treated as a credit against the child support payment of the disabled parent. *CSEA and DOE v. DOE*, 92 [Hawai'i] 276[, 990 P.2d 1158] ( [App.]1999).

4. It would not be equitable to withhold a credit against the support obligation because such payments may be the only means by which a disabled parent may satisfy the obligation. *CSEA and DOE v. DOE*, 92 [Hawai'i] 276[, 990 P.2d 1158] ( [App.]1999).

5. Based upon the evidence present, Father's monthly gross income is derived solely from his monthly social security payments.

6. The monthly child support previously entered into of $50.00 per child per month for a total of $100.00 per month shall not be calculated in the amount credited.

7. Father shall be credited from the date the children began receiving social security payments a total of $1,014.00 per month from January 2002 through February 2002, $914.00 per month from March 2002 through November 2002, and a total of $928.00 per month from December 2002

through September 2003 for a total of $19,534.00. Father's current child support arrearages will be offset every month by $928.00 until paid in full.

To the extent that any Finding of Fact is deemed to be a Conclusion of Law, it shall be so construed. To the extent that any Conclusion of Law is a Finding of Fact, it shall be so construed.

## II. Standards of Review.

### A.

■ " 'Since no rules or guidelines have been published advising the family court how to decide [a certain child support issue], the relevant appellate standard of review is the abuse of discretion standard.' " *CSEA v. Doe*, 98 Hawai'i 58, 64, 41 P.3d 720, 726 (App.2001) (brackets in the original) (quoting *Nabarrete v. Nabarrete*, 86 Hawai'i 368, 372, 949 P.2d 208, 212 (App.1997)). "An abuse of discretion occurs if the trial court has 'clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Doe*, 98 Hawai'i at 64, 41 P.3d at 726 (quoting *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992)).

### B.

■ This court views conclusions of law de novo under the "right [or] wrong" standard. *Roxas v. Marcos*, 89 Hawai'i 91, 115, 969 P.2d 1209, 1223 (1998) (reviewing conclusions of law de novo under the right or wrong standard); *State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (reviewing the interpretation of a statute de novo ). Findings of fact are reviewed under the clearly erroneous standard. *Child Support Enforcement Agency v. Roe*, 96 Hawai'i 1, 11, 25 P.3d 60, 70 (2001). "[A finding of fact] ... is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *In re Water Use Permit Applications*, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)).

*Kienker v. Bauer*, 110 Hawai'i 97, 105, 129 P.3d 1125, 1133 (2006) (brackets and ellipsis in the original).

## III. Discussion.

■ The only issue of note raised by Mother in her appeal is whether the family court erred in crediting the girls' dependent social security retirement benefits against Father's child support arrearages. Both Mother and Father acknowledge that the seminal case in this regard is the one the family court relied on, *CSEA v. Doe*, 92 Hawai'i 276, 990 P.2d 1158 (App.1999) (the *Doe* case). In the *Doe* case, we held that "the disabled obligor parent is normally entitled to credit for social security disability payments, at least for benefit payments that are contemporaneous with that parent's support obligation." *Id.* at 281, 990 P.2d at 1163 (footnote and citations omitted).

### A.

■ At the outset, we observe that the *Doe* case involved dependent social security disability benefits, while this one concerns dependent social security retirement benefits. We have wondered whether that distinction would make a difference:

> A third court has recognized that disability benefits as opposed to social security *retirement* benefits, may be deserving of credit treatment:
>
>> We can envisage a social security disability recipient parent making a stronger case for a credit than a social security retirement recipient[.] ... Suffice it to say here that disability may affect the parent's and child's standard of living in dramatically different ways than retirement, giving rise to a stronger claim for credit.
>
> *Stultz v. Stultz*, 659 N.E.2d 125 (Ind.1995).

*Doe*, 92 Hawai'i at 283–84, 990 P.2d at 1165–66 (emphasis, brackets and ellipsis in the original). In the *Doe* case, we ultimately decided that it would not make a dispositive difference, at least where a credit against contemporaneous child support obligations is

concerned: "We believe any objections at the crux of the foregoing views may be satisfied by the rebuttable nature of the presumption. Therefore, in considering the different views pertaining to this issue, we adopt the majority view which establishes a rebuttable presumption in favor of allowing a credit." *Id.* at 284, 990 P.2d at 1166 (footnote omitted).

Taking a fresh look at this issue at the threshold of this case, we note that a majority of jurisdictions considering the distinction has deemed it a distinction without a difference:

Of the jurisdictions examining this issue, the majority has declined to make a distinction between retirement benefits and disability benefits. *See Miller[ v. Miller],* 890 P.2d [574,] 577 [(Alaska 1995)]; *Lopez[ v. Lopez,* 125 Ariz. 309], 609 P.2d [579,] 581 [(Ariz.Ct.App.1980)]; *Cash[ v. Cash],* 234 Ark. 603, 353 S.W.2d [348,] 350 [(Ark.1962)]; *Childerson[ v. Hess],* 144 Ill. Dec. 551, [554,] 555 N.E.2d [1070,] 1073 [(Ill.App.Ct.1990)]. *See generally* [Tori R.A.]Kricken,[*Child Support and Social Security Dependent Benefits: A Comprehensive Analysis and Proposal for Wyoming,*] 2 Wyo.L.Rev. [39,] 67 [(2002) ].

Although most of the relevant cases from other states have addressed the issue in the context of social security disability benefits rather than retirement benefits—the type of benefits at issue here—there appears to be no theoretical basis for distinguishing between the two types of payment.

*Miller,* 890 P.2d at 577 (citing *Childerson,* 144 Ill.Dec. 551, [554, ]555 N.E.2d at 1073; *Lopez,* 609 P.2d at 581; *Cash,* 353 S.W.2d at 350). Common sense dictates that social security disability benefits should not be treated any differently than social security retirement dependency benefits for the purpose of calculating an obligor parent's support obligation.

*In re Marriage of Belger,* 654 N.W.2d 902, 907–08 (Iowa 2002) (footnote [4] omitted).

We, too, can detect no principled and humane reason to distinguish between disability-based benefits and age-based retirement benefits in this regard.

Social security disability payments are intended to replace lost income due to the employee's disability. *In re Marriage of Hilmo,* 623 N.W.2d [809,] 813 [(Iowa 2001)]. In the same manner, social security retirement benefits are intended to replace lost income due to the employee "reaching an age of possible diminished earning capacity." *In re Allsup,* 926 S.W.2d [323,] 328 [(Tex.App.1996) ].

*Belger,* 654 N.W.2d at 908. We see no reason to differ from the majority of courts, and proceed accordingly in our analysis.

## B.

In the *Doe* case, we joined a majority of jurisdictions in holding that a rebuttable presumption favoring a credit against contemporaneous child support obligations applies with respect to dependent social security disability payments:

We believe the better reasoned rule and equity require that social security disability payments for the child's benefit must be treated as a credit against the child support payment of the disabled parent. It is inequitable to withhold a credit against the support obligation because such payments may be the only means by which a disabled parent may satisfy the obligation:

The purpose of social security disability payments is to replace income lost due to the recipient's inability to work. *Horton v. Horton,* 219 Ga. 177, [178, ]132 S.E.2d [200,] 201 [(Ga.1963)]. Although a recipient of disability benefits might have independent sources of income,

---

4. Other courts have gone even further holding military benefits paid to the dependents of divorced servicemen discharge the non-custodial parent's child support obligation. *See, e.g., Thompson v. Thompson,* 254 Ark. 881, [883,-]496 S.W.2d 425, 426 (Ark.1973); *Andler v. Andler,* 217 Kan. 538, [544–45,]538 P.2d 649, 654 (Kan.1975); *Palow v. Kitchin,* 149 Me. 113, [118,]99 A.2d 305, 308 (Me.1953); *Kip-*

ping v. Kipping, 186 Tenn. 247, [250–51, ]209 S.W.2d 27, 29 (Tenn.1948). Similarly, other courts have held a parent is entitled to a credit for social security death benefits. *See, e.g., Gilford v. Wurster,* 24 Ohio App.3d 77, [77–78, ]493 N.E.2d 258, 260 (1983).

*In re Marriage of Belger,* 654 N.W.2d 902, 908 n. 2 (Iowa 2002).

commonly the disabled person is deprived of the only means of support upon becoming disabled. Therefore, it is inequitable to withhold a credit against the child support obligation. The parent charged with the support obligation may have no ability to satisfy that obligation other than through the governmental disability payments, which were effectively generated by contributions from wages while working. *Weaks v. Weaks,* 821 S.W.2d 503, 506 (Mo. 1991). We also believe this approach is more logical because such disability payments are not merely another source of income as they are treated under the 1998 [child support] guidelines, but represent "a substitute for [the obligor's] lost earning capacity." *In re Marriage of Cowan,* 279 Mont. 491, [501, ]928 P.2d 214, 221 (1996).

. . . .

We conclude, then, like the majority of states that have examined this question, that the disabled obligor parent is normally entitled to credit for social security disability payments, at least for benefit payments that are contemporaneous with that parent's support obligation. Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child,* 34 A.L.R.5th 447, 469 (1995). . . . *See e.g., Pacana v. State,* 941 P.2d 1263 (Alaska 1997); *In re Marriage of Henry,* 156 Ill.2d 541, 190 Ill.Dec. 773, 622 N.E.2d 803 (1993); *Miller v. Miller,* 929 S.W.2d 202 (Ky.Ct.App.1996); *Rosenberg v. Merida,* 428 Mass. 182, 697 N.E.2d 987 (1998); *Holmberg v. Holmberg,* 578 N.W.2d 817 (Minn.App.1998); *In re Cowan,* [279 Mont. 491, ]928 P.2d 214[ (Mont.1996)]; *Pontbriand v. Pontbriand,* 622 A.2d 482 (R.I.1993); *Crago v. Donovan,* 594 N.W.2d 726 (S.D.1999). *Doe,* 92 Hawai'i at 281–82, 990 P.2d at 1163–64 (some brackets in the original; footnote [5]

omitted). Anticipating a possible objection, we reasoned that " 'a credit for Social Security benefits does not retroactively modify the disabled parent's monthly child support obligation; it merely changes the source of the payments.' " *Id.* at 283, 990 P.2d at 1165 (emphasis omitted) (quoting *Cowan,* 928 P.2d at 220).

In the *Doe* case, the monthly social security disability payment exceeded the contemporaneous child support obligation:

In this case, the monthly social security payment is greater than the child support ordered by the court. The question remains as to the treatment of the excess portion of the payment, after the credit has been made for child support and Mother's share of any unreimbursed medical expenses.

The majority of courts treat the excess payment as a gratuity to the child so that the custodial parent is not obligated to repay the obligor parent the excess. *Pacana,* 941 P.2d at 1266 (citing *Weaks,* 821 S.W.2d at 507, *Andler v. Andler,* 217 Kan. 538, [544, ]538 P.2d 649, 654 (1975); *Children and Youth Servs. of Allegheny County v. Chorgo,* 341 Pa.Super. 512, [520–21] 491 A.2d 1374, 1379 (1985)). As a general matter, we agree with the majority of courts and conclude, further, that the amount of social security disability payments in excess of a child support obligation shall be deemed a gratuity to the child or children involved.

*Doe,* 92 Hawai'i at 285–86, 990 P.2d at 1167–68 (footnote omitted). That circumstance put us in mind of the situation that presents itself in this case, and we noted:

The majority of courts do not allow the application of excess benefits to reduce arrearages that accrued before the disability. *In re Marriage of Cowan,* 279 Mont. 491, [502,] 928 P.2d 214, 221 (1996). The reason is that "[t]he Social Security dis-

**5.** According to Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child,* 34 A.L.R.5th 447, 469–70 (1995), the following states have held that the obligor parent is entitled to credit: Alabama, California, Florida, Georgia, Illinois, Indiana,

Iowa, Kansas, Louisiana, Massachusetts, Michigan, Mississippi, Montana, Nebraska, New Mexico, Ohio, Rhode Island, South Dakota, Tennessee, and Washington.

*CSEA v. Doe,* 92 Hawai'i 276, 281 n. 6, 990 P.2d 1158, 1163 n. 6 (App.1999).

ability payments belong to the children. To allow any part of that money to be credited towards the [obligor's] arrearage which was due prior to [his or her] date of disability would be[,] in essence, requiring the children to purge the [obligor] of contempt." *Windham v. Alabama,* 574 So.2d 853, 855 (Ala.Civ.App.1990). *We are not faced with this issue and do not decide it.* *Doe,* 92 Hawai'i at 286 n. 9, 990 P.2d at 1168 n. 9 (some brackets in the original; emphasis supplied). Thus, this jurisdiction has not yet decided whether child support arrearages may be reduced by dependent social security benefits. We do so now.

## C.

■ First, and by the way, it has been asserted that "[t]hree distinct types of [child support] arrearages can arise and each requires separate consideration." *Chorgo,* 491 A.2d at 1379 (footnote omitted).

> First, there are arrearages which accrued prior to the start of the disability or retirement. Second, there are arrearages which accrued after the start of retirement or disability eligibility (and concurrent application for benefits), but before benefits were received.... Third, there are arrearages which accrued after the benefits were being received by the obligee and which exist by virtue of those payments not being applied to the support obligation.

*Id.* (footnotes omitted).[6] We need not parse the various possibilities presented by the following two, for it is here undisputed that we are concerned only with the first type of arrearages. In that event, as we noted in the *Doe* case, "The majority of courts do not allow the application of excess benefits to reduce arrearages that accrued before the disability." *Doe,* 92 Hawai'i at 286 n. 9, 990 P.2d at 1168 n. 9 (citing *Cowan,* 928 P.2d at 221).

For example, the Superior Court of Pennsylvania has announced, "We do not hesitate in declaring unequivocally that, when support payments are not made prior to the start of disability or retirement, that any excess in the benefits over the amount needed for cur-

rent support cannot be applied to those arrearages." *Chorgo,* 491 A.2d at 1379. The Supreme Court of Missouri has asked and answered the same question: "Are excess social security benefits available to satisfy any future support obligation or any arrearage accumulated prior to the disability? The answer must be no. Any excess is deemed a gratuity to the extent that it exceeds the amount of support mandated by the decree." *Weaks,* 821 S.W.2d at 507 (citations omitted). *See also Kirwan v. Kirwan,* 606 So.2d 771, 772–73 (Fla.Dist.Ct.App.1992); *Newman v. Newman,* 451 N.W.2d 843, 844 (Iowa 1990); *Matter of Marriage of Williams,* 21 Kan. App.2d 453, 900 P.2d 860, 861–62 (1995); *Frens v. Frens,* 191 Mich.App. 654, 478 N.W.2d 750, 751 (1991); *Mask v. Mask,* 95 N.M. 229, 620 P.2d 883, 885–86 (1980); *Pride v. Nolan,* 31 Ohio App.3d 261, 511 N.E.2d 408, 411 (1987).

An oft-quoted rationale for the majority rule is that composed by the Missouri Court of Appeals in *McClaskey v. McClaskey,* 543 S.W.2d 832, 835 (Mo.Ct.App.1976):

> During this time—from the divorce until the monthly benefits began—the wife was entitled prima facie to look to the husband for full and prompt payment of his obligation. This, because a child's need for food, clothing, lodging and other necessary expenses is current—today, this week, this month—and the expectation of a future payment does not meet these needs. To allow the lump-sum payment to be credited against the father's delinquencies, as he urges us to do, could permit him to deliberately create those delinquencies, thereby depriving his children of support, all in the hope that some accrued benefit would cancel his growing default. When the windfall comes, equitably it should inure not to the defaulting husband's benefit, but to his bereft children.

The Court of Appeals of Ohio relied upon a different analysis but reached the same conclusion:

> The Social Security Act, Title 42, U.S.Code, Section 401 et seq., provides

---

6. We do not hold with the proposition that there are only three material categories of child support arrearages. We can envision others, but that is a matter for another day.

that every dependent child of an individual who is entitled to Social Security benefits shall be entitled to a child's insurance benefit. See, Title 42, U.S.Code, Section 402(d)(1). We determine from this that the benefit inures directly to the child, notwithstanding the prerequisite status of the parent. No indices of the father's ownership ever attach to these funds. Thus, the [trial] court is, in effect, ordering the children to pay the accrued arrearages for their own support.

*Fuller v. Fuller,* 49 Ohio App.2d 223, 360 N.E.2d 357, 358 (1976). Put differently by the Court of Civil Appeals of Alabama, but to the same effect: "Clearly, the Social Security disability payments belong to the children. To allow any part of that money to be credited towards the father's arrearage which was due prior to his date of disability would be, in essence, requiring the children to purge the father of contempt." *Windham,* 574 So.2d at 855.

While the rationale may vary, the majority rule remains inveterately invariant:

> We hold where a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under the divorce decree. The father is entitled to credit, however, only up to the extent of his obligation for monthly payments of child support, but not exceeding it.

*Andler,* 538 P.2d at 654.

### D.

The majority rule notwithstanding, Father urges us to adopt the discretionary and decidedly minority approach favored by the Court of Appeals of Virginia:

> A rule giving the trial court discretion to grant credit, in whole or in part, or to deny credit against an arrearage, depending upon the circumstances, allows the judge

to consider the equities of a given situation. Whether a trial court elects to credit all or a portion of Social Security payments against a court-ordered support obligation should depend upon a number of factors, including but not limited to the extent to which the original support award was sufficient or deficient in meeting the child's needs, whether any modification of the support award has been made based upon the parent's disability, or a change in the child's needs, or the parents' abilities to provide support independent of the Social Security payments, and whether both parents have acted in good faith. To adopt a rule that requires trial courts to always or never treat Social Security payments as satisfying an arrearage in court-ordered support would unduly restrict trial courts from taking into consideration factors or events that would justify different treatment.

*Commonwealth v. Skeens,* 18 Va.App. 154, 442 S.E.2d 432, 436 (1994) (citing *Farley v. Farley,* 186 W.Va. 263, 412 S.E.2d 261, 265 (1991)).[7] The fact that Skeens was totally and permanently disabled was of especial importance to the Virginia court:

> In this case, the trial judge determined that "equity dictates that [Danny] Skeens receive credit for these benefits." Insofar as we can ascertain from this record, Skeens's child support obligation had not been reduced or modified after he became disabled for purposes of Social Security benefits and after he began receiving Social Security benefits or after the children began receiving their dependent children's benefits. Although Skeens should not be rewarded for allowing his child support obligation to go unpaid and to fall in arrears, neither should he be penalized by disallowing him credit for payments that were made to his children from a source of funds that were payable on his account. There is no evidence that suggests that Skeens had any source of income or assets, other than his Social Security disability benefits, from which his support obligation

---

**7.** In *Commonwealth v. Skeens,* 18 Va.App. 154, 442 S.E.2d 432, 435–36 (1994), the Court of Appeals of Virginia also relied upon *Dep't of Pub.*

*Aid ex rel. McNichols v. McNichols,* 243 Ill. App.3d 119, 183 Ill.Dec. 330, 611 N.E.2d 593, 595 (1993).

or arrearage could be paid that would justify treating the payment to the children as independent support. Under these circumstances, the trial court did not abuse its discretion by holding that "equity required" that Skeens be given credit on his accrued support obligation, thereby reducing his support arrearage to $6,931.04.

*Skeens,* 442 S.E.2d at 436 (brackets in the original).

On *Skeens,* we first observe that a substantial part of Skeen's child support arrearages accrued while his children were receiving dependent social security disability benefits. *Skeens,* 442 S.E.2d at 434. In any event, while it might be said that Father's circumstances parallel Skeen's—but only if we equate incarceration with disability—we decline to adopt the discretionary approach of the Virginia court, at least with regard to child support arrearages accruing before the obligor's claimed entitlement to social security benefits. We believe the policies underlying the majority rule are paramount, especially where the immediate needs of the children "—today, this week, this month—" are thereby subserved. *McClaskey,* 543 S.W.2d at 835.

Indeed, the incentives created by the majority rule may obviate any need for the equitable exercise of discretion in a case like ours:

> In so holding [that dependent social security benefits may not be credited against child support arrearages], we realize that the Father was disabled for the entire period during which the $9,082.25 arrearage accrued. While the result of our holding may appear harsh, we note that during this period, the Father never placed before the court a request for a modification of his child support payments. In May, 1990, he filed a pleading in which he requested an abatement of his support obligation but he never presented this request to the court. Subsequently, in a memorandum he filed with the court in January, 1992, the Father specifically stated that he did not dispute the arrearage. This statement superseded his prior request for an abatement. Had the Father properly moved for modification when he became disabled, he

may have avoided accruing the arrearage now assessed against him. This case illustrates the importance of timely application to the court for reduction of support obligations due to a change of circumstances, especially when the change is as extreme as that experienced by the Father in this case.

*Kirwan,* 606 So.2d at 773. In Father's case, the family court found that, "[w]hile Father was incarcerated, Father requested his child support be modified to the Child Support Enforcement Agency, at least three (3) times with no action on his requests." The family court further found that "Father's child support, while he was incarcerated should have been $50.00 per child per month for a total of $100.00 per month." However, nothing in the record indicates when and how Father made his requests to CSEA, and certainly nothing in the record suggests that Father promptly applied to the family court for a reduction. The point is, the majority rule creates every incentive for Father to have done so.

We hold, finally and as a matter of law, that dependent social security benefits may not be credited against child support arrearages accruing before the claimant's entitlement to the benefits. Hence, the family court was incorrect in concluding to the contrary, *Kienker,* 110 Hawai'i at 105, 129 P.3d at 1133 (reviewing conclusions of law *de novo* under the right or wrong standard), and thus abused its discretion in ordering otherwise. *Doe,* 98 Hawai'i at 64, 41 P.3d at 726 (reviewing child support decisions under the abuse of discretion standard).

## IV. Conclusion.

Accordingly, we vacate the October 7, 2003 order of the family court that granted Father's July 25, 2003 motion for post-decree relief, along with the October 14, 2003 order that denied Mother's September 5, 2003 motion for reconsideration. We remand for proceedings consistent with this opinion.