Edward GRAYS *v.* ARKANSAS OFFICE of CHILD
SUPPORT ENFORCEMENT

07-1202                                289 S.W.3d 12

Supreme Court of Arkansas
Opinion delivered November 6, 2008

*Billy J. Hubbell*, for appellant.

*Donna D. Galloway*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Edward Grays appeals from an order of the Drew County Circuit Court granting the motion for declaratory relief filed by Appellee Arkansas Office of Child Support Enforcement ("OCSE"). The circuit court's order granted judgment against Grays in the amount of $13,787.63 for child-support arrears and in the amount of $1,777.72 for related court costs and fees. The circuit court also determined that it would be inequitable for the former custodial parent to be denied the delinquent child support admittedly incurred by Grays, despite the fact that the child at issue had, after reaching the age of majority, received a lump-sum payment for Social Security disability benefits due to his father's disability. Grays argues on appeal that the circuit court erred in concluding that he was not entitled to credit the payment of disability benefits to his son against his child-support arrears. Because this case presents an issue of first impression, of substantial public interest, and in need of clarification or development of the law, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(b)(1), (4), and (5) (2008). We find no error and affirm.

Pursuant to a decree of divorce filed August 10, 1990, Flossie Grays Junior was awarded custody of her two children with Edward Grays. Grays was ordered to pay $108 bi-weekly in support of the children, Shagala and Shane. Grays was also assessed an annual child-support administrative fee in the amount of $24. Grays's child-support obligation was subsequently altered by the following orders:

July 17, 1998: Grays's obligation reduced to $61 per week because Shagala had been emancipated; $55 in costs assessed.

December 22, 1998: Judgment granted against Grays in the amount of $3,057.20 for past-due child support; Grays ordered to pay $61 per week in current support and $6.10 per week toward arrears; $55 in costs assessed; attorney's fee of $305.72 assessed.

December 21, 1999: Judgment granted against Grays in the amount of $3,579.20 for past-due child support; Grays ordered to pay $61 per week in current support and $9 per week toward arrears; $55 in costs assessed.

June 23, 2000: Judgment granted against Grays in the amount of $5,316.20 for past-due child support; Grays ordered to pay $61 per week in current support and $9 per week toward arrears; $410 in costs and attorney's fees assessed.

July 13, 2001: Judgment granted against Grays in the amount of $1,956.20 for past-due child support; Grays ordered to pay $61 per week in current support and $9 per week toward arrears; $380 in costs and attorney's fees assessed.

December 17, 2003 (order amended January 13, 2004): Judgment granted against Grays in the amount of $8,660.20 for past-due child support; Grays ordered to pay $61 per week in current support and $9 per week toward arrears; $320 in costs and attorney's fees assessed.

March 16, 2005: Judgment granted against Grays in the amount of $12,610.63 for past-due child support; Grays ordered to pay $36 per week in current support; order directed that no amount be paid toward arrears because Grays had no income and was pursuing a claim for Social Security disability benefits.

Body attachments with cash bonds were issued against Grays on June 7, 2000; March 12, 2001; and September 2, 2005. An order entered on October 26, 2005, dismissed the September 2, 2005, body attachment and ordered Grays to resume support payments of $36 per week.

On October 27, 2005, a Social Security Administration Administrative Law Judge found that Grays had been disabled since November 21, 2001. The ALJ issued a decision, based on Grays's June 11, 2003, application, finding that Grays was entitled to a period of disability commencing on November 21, 2001, and continuing through the date of the decision. As a result, Grays received a lump-sum payment of $16,615.20 in disability back pay for the period between June 2002 and January 2006. In 2006, he began receiving monthly payments of $1,067.[1] Those payments were increased to $1,102 per month in 2007.

On August 1, 2006, the Social Security Administration issued a check in the amount of $15,835 to Shane, as an auxiliary benefit to Grays's disability status. This amount represented back

---

[1] The parties stipulated to this fact below. However, other evidence in the record indicates that Grays's monthly payments were in the amount of $979.

pay for the period between June 2002 and January 2006. Because he had turned eighteen years old on January 3, 2006, Shane was not entitled to continuing monthly payments from the Social Security Administration. In addition, Grays's ongoing child-support obligation had terminated by operation of law due to Shane's reaching the age of majority. However, as of 2006, Grays owed past-due support in the amount of $13,787.63 and unpaid costs and fees in the amount of $1,753.72.[2]

Consequently, OCSE issued an income withholding notice to the Social Security Administration, seeking to recover from Grays's disability benefits. In August of 2006, pursuant to the notice, OCSE began receiving payments of $156 per month. This amount was deducted from Grays's monthly benefits payment. The August 2006 deduction was disbursed to Flossie Junior, while subsequent deductions were placed on "distribution hold" by OCSE.

On August 22, 2006, OCSE filed its motion for declaratory relief in the circuit court, responding to Grays's request that the lump-sum payment from the Social Security Administration to his son be credited against his child-support arrears. OCSE requested that the circuit court determine whether Grays was entitled to the offset. Following a hearing and the submission of briefs by the parties, the circuit court issued a letter opinion, dated July 19, 2007, and formal order, dated July 31, 2007. The court found that the payment to Shane by the Social Security Administration did nothing to relieve the inequities resulting from Grays's chronic failure to pay child support. The court specifically noted that, while the support was intended for Shane's benefit, Flossie bore the costs associated with Grays's failure to pay. Accordingly, the court ordered that the income withholding notice would continue until all judgments against Grays were satisfied in full and directed that those payments that had been collected but placed on distribution hold be released to Flossie and credited toward the judgment for child-support arrears. Grays filed a timely notice of appeal.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v.*

---

[2] This amount differs from the $1,777.72 judgment ultimately entered for costs and fees by $24, which represents the annual administrative fee assessed at the beginning of 2007.

*Doss*, 361 Ark. 153, 158, 205 S.W.3d 767, 770 (2005). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* However, a circuit court's conclusions of law are given no deference on appeal. *Id.*

Grays contends that a 2004 decision by the Arkansas Court of Appeals, *Arkansas Office of Child Support Enforcement v. Harris*, 87 Ark. App. 59, 185 S.W.3d 120 (2004), answers the question at issue. The court of appeals in *Harris* affirmed a circuit court's ruling permitting Social Security disability payments made to an adult child to discharge the non-custodial parent's child-support arrearage. *Id.* The decision relied in part upon this court's holding in *Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348 (1962), in which a non-custodial father was permitted to displace his court-ordered child-support payments by Social Security retirement benefits paid to his son. Our decision in *Cash* was premised largely on equitable principles, specifically the father's supposed inability to retire if forced to continue paying child support and his good-faith efforts to meet his "moral obligation" to his son and former wife. *Id.* at 605-06, 353 S.W.2d at 349-50. The court of appeals in *Harris*, however, was precluded from addressing equitable factors urged by OCSE, such as the financial impact on the custodial parent, the financial standing of the non-custodial parent, and the length of the non-custodial parent's disability, because such factors were not argued at the trial level and thus not preserved for appellate review. 87 Ark. App. at 62, 185 S.W.3d at 122. OCSE argues in the instant case that the *Harris* court's inability to consider equitable factors distinguishes it from the case at bar.

OCSE points to another critical distinction in the *Harris* case. The court of appeals explicitly limited its holding as follows:

> There are differing views as to whether social security benefits can be credited toward *arrearages* in child support. Some courts do not allow it. Others permit it, but allow credit only for arrearages that accrue during the period of disability. Appellant did not argue below that arrearages, per se, were not subject to discharge. For this reason and because the record was not developed on this issue, we leave that question for another day.

*Harris*, 87 Ark. App. at 62, 185 S.W.3d at 122 n.2 (emphasis in original) (internal citations omitted). Indeed, our review of cases from

other jurisdictions addressing this issue shows a variety of approaches. Some jurisdictions have chosen not to permit credits against the non-custodial parent's child-support arrears, noting that to do so would amount to "ordering the children to pay the accrued arrearages for their own support." *Fuller v. Fuller*, 360 N.E.2d 357, 358 (Ohio Ct. App. 1976); *see also Hennagin v. County of Yolo*, 481 F. Supp. 923 (E.D. Cal. 1979). Others have allowed credits on the basis of Social Security benefits. *See, e.g., Binns v. Maddox*, 327 So. 2d 726 (Ala. Civ. App. 1976); *Perteet v. Sumner*, 269 S.E.2d 453 (Ga. 1980); *Folds v. Lebert*, 420 So. 2d 715 (La. Ct. App. 1982); *Cohen v. Murphy*, 330 N.E.2d 473 (Mass. 1975); *Hanthorn v. Hanthorn*, 460 N.W.2d 650 (Neb. 1990); *Griffin v. Avery*, 424 A.2d 175 (N.H. 1980). The Supreme Court of Kansas has noted as follows:

> Social Security benefits paid to the [custodial parent] for the benefit of the parties' minor children as the result of the [non-custodial parent's] disability may not, however, be regarded as gratuitous. On the contrary, the payments received by the [custodial parent] are for the children as beneficiaries of an insurance policy. The premiums for such policy were paid by the [non-custodial parent] for the children's benefit. The purpose of Social Security is the same as that of an insurance policy with a private carrier, wherein a father insures against his possible future disability and loss of gainful employment by providing for the fulfillment of his moral and legal obligations to his children. This tragedy having occurred, the insurer has paid out benefits to the beneficiaries under its contract of insurance with the [non-custodial parent], and the purpose has been accomplished.

*Andler v. Andler*, 538 P.2d 649, 653 (Kan. 1975). The rationale for permitting credits against child-support arrears has been similarly articulated by other courts.

Still other jurisdictions have permitted credits but have made distinctions among types of arrearages that may be discharged. For example, some have disallowed credit against arrearages accumulating prior to the date of disability, reasoning that there is no excuse for the failure to pay prior to the onset of disability. *See, e.g., Frens v. Frens*, 478 N.W.2d 750 (Mich. Ct. App. 1992); *Weaks v. Weaks*, 821 S.W.2d 503 (Mo. 1991). Others have allowed credits only against those arrearages accruing after the child's receipt of benefits. *See, e.g., Potts v. Potts*, 240 N.W.2d 680 (Iowa 1976); *Miller v. Miller*, 929 S.W.2d 202 (Ky. Ct. App. 1996);

*Mask v. Mask*, 620 P.2d 883 (N.M. 1980); *Children & Youth Servs. of Allegheny County v. Chorgo*, 491 A.2d 1374 (Pa. Super. Ct. 1985). With regard to arrearages accrued during the period between the disability date or application for benefits and the commencement of benefits payments, several courts have looked to factors such as whether the failure to pay was willful and whether there was a demonstrated inability to pay. *See, e.g., Miller v. Miller, supra; Children & Youth Servs. of Allegheny County v. Chorgo, supra.*

Among the highly varied holdings of these and other cases, we find one consistent similarity: the consideration of equitable factors in an effort to reach a fair and just result. Fact-specific inquiries, most notably the non-custodial parent's history of failure to support, are central to the decisions. This standard is not inconsistent with the approach to child support taken by this court. Child-support cases in this state have long been subject to equitable considerations. *See Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007); *Borden v. Borden*, 20 Ark. App. 52, 724 S.W.2d 181 (1987). Our Administrative Order Number 10, which sets forth child-support guidelines, directs that it is a rebuttable presumption that the amount of support calculated pursuant to the Family Support Chart is the amount to be awarded. Ark. Sup. Ct. Admin. Order No. 10, § 1. A court setting an award of support "may grant less or more support if the evidence shows that the needs of the dependents require a different level of support." *Id.* The Administrative Order specifically takes into account Social Security disability benefits: "For Social Security Disability recipients, the court should consider the amount of any separate awards made to the disability recipient's spouse and children on account of the payor's disability." *Id.* § 3(c). Thus, we have not foreclosed the possibility that Social Security benefits may affect a non-custodial parent's child-support obligation.

The fact-intensive nature of these cases from other jurisdictions leads us to the conclusion that equity would not be well served by the pronouncement of a bright-line rule allowing or disallowing credits in all situations or allowing credits for arrearages accrued during particular periods of time. Rather, we hold that equitable considerations are applicable in determining whether a non-custodial parent may receive a credit against past-due child support by the payment of Social Security disability benefits to the child for whom support is owed. The discretion in this determination is best left to the circuit court. When considering the equities involved, the instant case is most analogous to

*Fowler v. Fowler*, 244 A.2d 375 (Conn. 1968), a decision of the Supreme Court of Connecticut. There, the trial court found that "for more than five years the [non-custodial parent] had completely ignored the order of court, that at no time had he made any payment from his personal funds in obedience to the order, and that during that time the minor children received nothing from him until the payments from the Social Security Administration were initiated." *Fowler*, 244 A.2d at 377. The Supreme Court of Connecticut affirmed on appeal the trial court's conclusion that the Social Security Administration's payments to the custodial parent were not allowable as a credit against the non-custodial parent's arrears. *Id.* The holding was limited to the case at bar and did not conclude as a matter of law that such a credit would not be allowed "where the factual situation justifies such an order." *Id.*

The equities in the instant case clearly favor Flossie Junior. She testified at length regarding her difficulty accumulating sufficient income, through her sometimes sporadic jobs as a beautician and substitute school teacher, to cover her expenses. Her expenses include those associated with caring for her nine-year-old daughter from a subsequent marriage and for her elderly mother. Flossie also testified that she has long relied on food stamps, the free school lunch program, and free children's health insurance. Moreover, she stated that she has amassed approximately $10,000 in credit-card debt for family expenses, which she has been unable to repay. In addition, her child-support case against Grays had been open for seventeen years at the time of the hearing below, and she has been forced to obtain multiple judgments against him for his failure to pay.

For his part, Grays points out that he is disabled and has not been gainfully employed since his disabling injury in November of 2001. He also avers that the child-support arrears accumulated mostly during the period of his disability. In addition, he claimed at the hearing to have paid $5,000 in child support at one point, although Flossie denied that this payment had ever been made. Grays also claimed to have purchased school clothes for his son and to have provided health insurance for him while he was enrolled in school. He asserted at the hearing that he was still paying for his son's life insurance.

Flossie Junior testified that her monthly income is less than $700. Grays's monthly disability payments exceed that amount, even after the $156 deduction in accordance with the income

withholding notice. At the time of the hearing, Flossie was supporting her young daughter and elderly mother, while Grays had no dependents.[3] Most importantly, Grays had chronically failed to pay child support, even before his disability, despite multiple judgments against him for arrears. We agree with the circuit court's assessment; the fact that Shane received $15,835 from the Social Security Administration did nothing to relieve the inequities borne by Flossie and caused by Grays's utter failure to honor his child-support obligation.

We hold that, in light of the equities involved, Grays was not entitled to discharge his child-support arrears with the payment of Social Security disability benefits to his son. Accordingly, the order of the circuit court is affirmed.

Affirmed.

---

[3] Grays testified that he had remarried but that he and his wife were currently separated and had never lived together. He stated that his wife did not contribute to his household expenses.